UNITED STATES of America, Appellee,

v.

Martina VELASQUEZ–CRUZ, Appellant.

No. 89–2878.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 29, 1990.

Decided April 1, 1991.

---

Milton A. DeJesus, Little Rock, Ark., for appellant.

Linda B. Lipe, Little Rock, Ark., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and CAHILL,[*] District Judge.

McMILLIAN, Circuit Judge.

Martina Velasquez–Cruz appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas [1] upon a jury verdict, finding her guilty of three counts of willful transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). The district court sentenced her to time served and a special assessment, and recommended deportation from the United States. On appeal, defendant argues that her conviction was not supported by sufficient evidence. For the reasons stated below, we affirm the judgment of the district court.

I. Facts

In 1989, six illegal aliens emigrated from Ecuador to America. The aliens initially came to Los Angeles, California, but sought to move to New York City. While the aliens were in Los Angeles, they met defendant, an illegal alien who was applying for amnesty from the government, and also wanted to move to New York. The aliens pooled their money, and bought a used car and a van. In March 1989, defendant, the aliens, and Pedro Mendez–Pacheco (another illegal alien) left Los Angeles. For at least part of the journey, Mendez–Pacheco drove the van and defendant drove the car. The parties disagree as to whether defendant arranged the purchase of the car, and as to whether she did all the driving.

On March 13, 1989, defendant was driving the used car through Lonoke, Arkansas, and Mendez–Pacheco was driving the

---

* The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

van. Craig Weinbrenner, a United States Border Patrol Agent, pulled the car over, and discovered that defendant, Mendez–Pacheco and their passengers were illegal aliens. Weinbrenner then arrested both the drivers and their passengers for illegal alienage.

Defendant was later charged and was found guilty by a jury of willful transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(B) (1988).

At trial, and again after trial, defendant moved for a judgment of acquittal on the ground that the government's evidence of "willful furtherance" was insufficient to support a conviction. The district court denied each motion on the ground that there was sufficient evidence to support the jury's verdict. *See United States v. Velasquez–Cruz*, No. LR–CR–88–38(2), slip op. (E.D.Ark. Aug. 11, 1989) (order denying motion for judgment of acquittal) (*Velasquez–Cruz*).

The district court sentenced defendant to time served, a special assessment, and deportation from the United States. This appeal followed.

## II. Issues

We have held that in reviewing claims of insufficient evidence to support a conviction, this court must view the evidence "in the light most favorable to the government and must give the government the benefit of all reasonable inferences that may logically be drawn from the evidence." *United States v. Gleason*, 766 F.2d 1239, 1246 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), *citing United States v. DeLuna*, 763 F.2d 897, 924 (8th Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). In this case, the parties disagree as to (1) the proper definition of "willful furtherance" under § 1324(a)(1)(B) and (2) whether, under the appropriate definition, sufficient evidence exists to support defendant's conviction. Each issue will be addressed in turn.

## A. The Proper Test

■ 8 U.S.C. § 1324(a)(1)(B) imposes criminal penalties on any person who "knowing[ly] or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports ... [such an alien] in furtherance of such violation of law." Under § 1324(a)(1)(B), a defendant may not be convicted for merely driving a vehicle containing illegal aliens. Instead, the government must show that "the defendant acted willfully in furtherance of the alien's violation of the law." *United States v. Hernandez*, 913 F.2d 568, 569 (8th Cir.1990) (*Hernandez*), citing *United States v. 1982 Chevrolet Crew–Cab Truck*, 810 F.2d 178, 181 (8th Cir.1987) (*Chevrolet*).

■ The district court held that sufficient evidence supported the jury's finding that defendant acted "in furtherance" of the aliens' trip to New York, because her "driving of the illegal aliens when she was apprehended in Arkansas was more than merely 'incidental' to the presence of those illegal aliens in the United States." *Velasquez–Cruz*, slip op. at 1–2. Thus, the district court apparently applied the Ninth Circuit's "incidental connection" test for ascertaining whether a defendant has acted "in furtherance" of illegal immigration. *See United States v. Moreno*, 561 F.2d 1321, 1322 (9th Cir.1977) (where transportation of an illegal alien is "only incidentally connected to the furtherance of the violation of law.... It was too attenuated to come within the boundaries of [§ 1324]") (*Moreno*).

Defendant suggests that the district court erred in using the *Moreno* standard. Specifically, defendant argues that in order to establish a violation of § 1324(a)(1)(B), "the government must prove that the defendant transported an alien with the purpose of supporting or promoting his or her illegal presence." *United States v. 1982 Ford Pick-up*, 873 F.2d 947, 951 (6th Cir. 1989).

Our opinion in the *Chevrolet* case is on point. In *Chevrolet*, an employer used his truck to transport several illegal aliens to and from work. When the aliens were

arrested, the federal government filed a complaint for forfeiture under 8 U.S.C. § 1324(b), which allows the government to seize any property used in the commission of a violation of § 1324(a). The district court found such a violation, and the employer appealed, contending that under *Moreno,* "a defendant's transportation of illegal aliens as an act merely incidental to his employment of them does not give rise to a violation of § 1324(a)," *Chevrolet,* 810 F.2d at 182. We affirmed, and distinguished *Moreno* on the basis that the *Chevrolet* employer "is not a third party employee only *incidentally connected* to the violation; he is the employer and as such his provision of transportation for the aliens was clearly in furtherance of a violation of § 1324(a)." *Id.* (emphasis added). Thus, it appears that our *Chevrolet* decision adopted the *Moreno* court's "incidental connection" test. Although this case, unlike *Chevrolet* and *Moreno,* does not involve an employer/employee relationship between the defendant and other illegal aliens, those cases are nevertheless applicable by analogy. *See United States v. Perez–Gomez,* 638 F.2d 215, 218–19 (10th Cir. 1981) (*Moreno* applied even though court did not suggest that the defendant employed aliens). Accordingly, we hold that the district court correctly applied the *Moreno* "incidental connection" test.

### B. Was Moreno *Properly Applied?*

■ As noted above, the district court found that "there was evidence before the jury from the testimony of [the aliens]. . . . from which the jury could infer that Ms. Velasquez–Cruz's driving of the illegal aliens when she was apprehended in Arkansas was more than merely 'incidental' to the presence of those illegal aliens in the United States." *Velasquez–Cruz,* slip op. at 1–2. The district court added that although certain testimony alleging that defendant drove non-stop from Los Angeles to Arkansas "would appear to the Court to be somewhat difficult to accept . . . these were questions of credibility for the jury to

determine", *id.* at 2. On appeal, defendant argues that under the *Moreno* test, her transportation of aliens was merely incidental to her own journey to New York, because she merely "car-pooled" with the other aliens rather than playing an organizational role. In support of this theory, defendant notes that she did not meet the other aliens until they had already entered the United States, did not instigate their plan to move to New York, and was not particularly knowledgeable about the New York job market. Indeed, it appears that she met the other aliens by chance. Defendant also denies making any effort to conceal the other aliens, and relies on several statements made by other aliens. Specifically, defendant notes that Jaime Zhunio–Curillo testified that defendant was not the car's only driver, Marcos Vera–Ruiz (who testified that at least two people drove the van) failed to mention defendant at all in his testimony, and that Julio Caracondo–Reynosa testified that when he first met a woman (presumably defendant) in Los Angeles to discuss moving to New York, she did not offer to help him leave Los Angeles, but instead stated only that "she could help by leaving right away" and could help him buy a car. Defendant further argues that Caracondo–Reynosa never actually identified her as the woman he met in Los Angeles, even though another woman was in the car with him,[2] and that Luis Lucera–Lituma and Vera–Ruiz testified that the money to buy a car was given to a man. Finally, defendant also questions the testimony of one of the prosecution witnesses, Miguel Marquez–Paucar. Marquez–Paucar, unlike Zhunio–Curillo, testified that defendant was the car's only driver and did not stop any place to rest. Defendant argues that Marquez–Paucar's testimony should not have been credited, because defendant was three months pregnant at the time of the offense, and it is highly unlikely that even a non-pregnant driver could drive nonstop from California to Arkansas.

---

**2.** On the other hand, Caracondo–Reynosa identified defendant as the driver of the car, and nothing in his testimony suggests that the driver and the woman he met in Los Angeles were different people.

In sum, defendant argues that her transportation of illegal aliens was merely incidental to her own journey to New York, because she did not instigate the aliens' plan to move or persuade them to do so, did not seek to conceal the aliens, did not sell the car or receive the money for its sale, and shared the driving with other aliens. *See United States v. One 1982 Toyota SR 5 Pick–Up Truck*, 642 F.Supp. 335, 337 (N.D.Ill.1986) (courts must distinguish between "surreptitious or furtive transportation of undocumented aliens which inhibits government enforcement of immigration laws and more attenuated incidents involving minimal employment-related transportation") (*Toyota*), *citing United States v. Fierros*, 692 F.2d 1291, 1295 (9th Cir.1982), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

We have carefully reviewed the record and hold that there is sufficient evidence in the record to support the jury verdict. First, there was evidence that defendant played a key role in buying the car. Caracondo–Reynosa testified that he gave a woman (presumably defendant) the money for the car. Second, defendant apparently met the other aliens in a "safe house." Marquez–Paucar testified that after meeting defendant for the first time, "[w]e went to a house ... [and] the next day we left with that lady" (Transcript of Trial at 74) ("Transcript"). When the aliens left Los Angeles, the same woman (presumably defendant) was driving. Similarly, Caracondo–Reynosa stated that after he met defendant, she told him to go to a room where she would pick the aliens up the following morning. Thus, it appears that defendant's transportation of the aliens was "surreptitious or furtive." *Toyota*, 642 F.Supp. at 337. Third, Marquez–Paucar was not the only witness who testified that defendant was the only person they saw driving the car. Lituma–Carreno and Caracondo–Reynosa also testified that defendant was the only person they saw driving (Transcript at 94, 175). Moreover, many of defendant's arguments prove only that other persons collaborated in transporting the aliens (by helping to drive the car or receiving payment for the car), rather than establishing defendant's own innocence. In sum, substantial evidence supports the jury's conclusion that defendant organized the aliens' journey, rather than merely participating in it as a "car-pooler."

We therefore hold that defendant's conviction was supported by sufficient evidence, and we accordingly affirm the judgment of the district court.