**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Aquiles CHAVEZ–PALACIOS,
Defendant–Appellant.**

**Nos. 93–2222, 93–2239.**

United States Court of Appeals,
Tenth Circuit.

July 13, 1994.

Jose Ramiro Coronado, Las Cruces, NM, for defendant-appellant.

John J. Kelly, U.S. Atty. (Rhonda P. Backinoff, Asst. U.S. Atty.), Albuquerque, NM, for plaintiff-appellee.

Before KELLY, Circuit Judge, McKAY, Senior Circuit Judge, and BRIMMER *, District Judge.

BRIMMER, District Judge.

Appellant Aquiles Chavez–Palacios was convicted of two counts of unlawfully transporting illegal aliens in violation of 8 U.S. § 1324(a)(1)(B) and with aiding and abetting his co-defendant Reynaldo Torres–Saucedo in the commission of these offenses pursuant to 18 U.S.C. § 2. On appeal, he asserts that the evidence was insufficient to support his conviction under § 1324, along with two claims under the Sentencing Guidelines regarding the length of his sentence. The case was initially set for oral argument, but the parties subsequently agreed to submit the matter on the briefs. We exercise jurisdiction over appellant's timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and, finding no error, we affirm.

I.

On February 20, 1993, a van driven by the defendant-appellant was stopped by the Alamagordo Department of Public Safety because of a defective rear tail light. Officer Joe Hernandez approached the van with the assistance of another officer. As Officer Hernandez was walking towards the driver's side door, he noticed several individuals lying down in the back of the van. The officers ordered all of the people out of the van and asked for identification. When some of the people in the back of the van were unable to produce the requested citizenship papers, the defendant and his co-defendant were subsequently arrested for the unlawful transportation of illegal aliens within the United States.

The defendant was subsequently indicted in a two-count indictment charging him with two counts of unlawfully transporting illegal aliens and with aiding and abetting Torres in the unlawful transportation of illegal aliens.[1] On May 10, 1993, a one-day trial was held in this matter. The following day, the jury returned a verdict of guilty on both counts of the indictment. On July 26, 1993, the district court sentenced the defendant to a four (4) month term of imprisonment to be followed by two years of supervised release. The defendant thereafter filed a timely notice of appeal. On August 27, 1993, the defendant was released from prison after having served four months in prison.[2]

II.

Appellant raises three arguments on appeal: (1) whether there was sufficient evidence by which a reasonable jury could find him guilty of transporting illegal aliens within the United States; (2) whether the trial court erred in finding that the offense was committed for profit, thereby denying appellant of a three-level base offense level reduction; and (3) whether the trial court erred in rejecting appellant's assertion that he was entitled to a two-level reduction because he was a minor participant in these offenses. There is, however, a threshold matter that we must decide before we may reach the merits of appellant's claims, which is whether any of appellant's claims have become moot due to the fact that he was released from incarceration while this appeal was pending.

A.

▋ Article III limits the exercise of the "judicial Power" to actual "cases" and "controversies." U.S. CONST. art. III, § 2; *see generally Drake v. Cheyenne Newspapers, Inc.*, 842 F.Supp. 1403, 1407–08 (D.Wyo.1994) (Brimmer, J.). It is clear that, at a minimum, the case or controversy limitation pro-

---

* The Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation.

1. 18 U.S.C. § 1324(a)(1)(B) provides that any person who:

   knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, *in furtherance of* such violation of law ... [shall be guilty of a felony].

   (emphasis added).

2. Appellant was incarcerated for three months from the date of his arrest up through the trial in this matter. He thus received three months credit for time served which counted towards his sentence.

hibits a federal court from rendering an advisory opinion. *See North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), *cited approvingly in Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *see also Taxpayers for Animas–La Plata v. Animas La–Plata,* 739 F.2d 1472, 1478 (10th Cir.1984) (citing *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201–02, 24 L.Ed.2d 214 (1969)).

■ The "mootness" doctrine derives, at least in part, from the case or controversy limitation contained in Article III. *See Central Wyoming Law Associates, P.C. v. Denhardt,* 836 F.Supp. 793, 807 & n. 9 (D.Wyo. 1993) (Brimmer, J.) (discussing *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). The mootness principle raises the question of whether a live case or controversy exists at a particular stage of a judicial proceeding. If a case becomes "moot" at any phase of any judicial proceeding, then the case must be dismissed, unless one of the recognized exceptions to the mootness doctrine exists, because resolution of the matters sought to be adjudicated would constitute an advisory opinion in violation of Article III. *E.g., DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974) *(per curiam )* (citing cases).

■ Appellee argues that appellant's sentencing claims have become moot because and that the collateral consequences doctrine [3] does not apply since these claims only address the length of appellant's incarceration and not the fact of conviction itself. *See Lane v. Williams,* 455 U.S. 624, 631–32, 102 S.Ct. 1322, 1326–28, 71 L.Ed.2d 508 (1982) (noting that challenges to the length of incarceration become moot once the defendant is released pending appeal and indicating that the collateral consequences exception to the mootness doctrine does not make these claims justiciable). We are not persuaded by this argument for two reasons.

First, part of appellant's sentence included a two year term of supervised release. Because our decision could affect this aspect of appellant's sentence, the case is not moot. *See, e.g., Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 925 (9th Cir.1993) *(per curiam )* (citing *United States v. Smith,* 991 F.2d 1468, 1470 (9th Cir.1993)).

Second, appellee's mootness argument fails to account for the fact that *Lane* and other cases upon which he relies predate the enactment of the Sentencing Guidelines. Pursuant to §§ 4A1.1(b) and (c) of the Sentencing Guidelines, an individual who is sentenced to a term of imprisonment in excess of sixty (60) days is subject to an automatic increase of his criminal history score by two points instead of the one point increase he would receive had he been sentenced to a term of probation. Although we have yet to rule on this precise issue, we agree with the reasoning of the Ninth Circuit in *United States v. Dickey,* 924 F.2d 836 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991), which held that under such circumstances, the fact that the defendant is released while his appeal is pending does not render the appeal moot. *Id.* at 838. Therefore, we are free to review the merits of all of appellant's claims.

### A.

Appellant's first contention is that there was insufficient evidence to support his conviction with respect to the statutory element of this crime that requires proof that appellant willfully furthered the aliens' presence in this country.

■ The standard of review applied to claims that the evidence was insufficient to sustain a conviction is well-established. We view the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, "convinces us that a rational factfinder could reasonably

---

3. The Supreme Court has held that the "collateral consequences" that flow from a criminal conviction, such as the loss of certain civil rights, transforms a case that would be moot into an otherwise justiciable controversy. *See Sibron v.*

*New York,* 392 U.S. 40, 49, 88 S.Ct. 1889, 1895–96, 20 L.Ed.2d 917 (1968); *Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968).

have found" the appellant guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *see also United States v. Coleman,* 9 F.3d 1480, 1482 (10th Cir.1993); *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Our review of the record is necessarily *de novo. See United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992).

We recently commented on the deferential and limited nature of appellate review of claims challenging the sufficiency of the evidence, stating that:

> [t]o overturn a jury's conclusion of fact, we must find that no reasonable juror could have reached the disputed verdict. The standard [of review] requires us to review the record of the trial to determine if there is evidence to support the verdict.

*United States v. Hoenscheidt,* 7 F.3d 1528, 1520 (10th Cir.1993) (citation omitted).

■ Appellant's primary argument rests on the "in furtherance of" language contained in the statute. He argues that there was insufficient evidence to support the jury's finding on the question of whether the appellant willfully furthered the aliens' illegal presence in the United States, an essential element of this offense. *See United States v. Perez–Gomez,* 638 F.2d 215, 218 (10th Cir. 1981); *accord United States v. Velasquez–Cruz,* 929 F.2d 420, 422 (8th Cir.1991); *United States v. Merkt,* 764 F.2d 266, 270 (5th Cir.1985).

■ Appellant's counsel correctly notes that mere transportation of an illegal alien is, without more, insufficient as a matter of law to support a conviction under this statute. *See Velasquez–Cruz,* 929 F.2d at 422; *United States v. Salinas–Calderon,* 585 F.Supp. 599, 601 (D.Kan.) (citing *United States v. Moreno,* 561 F.2d 1321, 1322 (9th Cir.1977)), *rev'd on other grounds,* 728 F.2d 1298 (10th Cir.1984). He further argues that the government failed to carry its burden of establishing a nexus between the transportation of the aliens and an intent to further their presence in this country. *See Merkt,* 764 F.2d at 271–72 (citation omitted). While we agree with this statement of the law, we do not agree with counsel's application of these principles to the facts of this case. Our independent review of the record leads us to conclude that there was evidence in the record which, if found credible by the jury, would adequately sustain the jury's verdict.

The government's evidence included testimony that the appellant was the driver of the van; that he knew that the aliens' were illegally present in this country; that he knew that he might "get in trouble" for driving a van with these aliens in it; that the aliens were lying down in the rear of the van; and that the van was headed towards Denver so that the aliens could attempt to find work there. Although the defendant offered evidence of his so-called "mere presence" defense, our task is not to review matters of credibility and assess the weight of the evidence. *See United States v. Davis,* 473 F.2d 1023, 1025 (10th Cir.1973). Rather, we must give the government the benefit of the doubt and assume that the jury found its evidence, both direct and circumstantial, to be credible.

Under these circumstances, the jury's finding of guilt means that it found that the defendant had the intent to further the aliens' presence in this country. There is legally sufficient evidence in the record to support this finding, including the direct testimony of certain government witnesses as well as the reasonable inferences to be drawn from the other testimony adduced at trial. Therefore, we must reject this claim.

### B.

Appellant's remaining arguments involve challenges to the trial court's calculation of his base offense level under the Sentencing Guidelines. Specifically, he contends that the trial court erred in finding that this offense was committed for profit, thereby denying him a three-level reduction under § 2L1.1(b)(1), and that the trial court erred in refusing his claim of entitlement to a two-level reduction under § 3B1.2(b) based on his

claim that he was a "minor" participant.[4]

A trial court's findings concerning a defendant's role in a particular offense are treated by an appellate court as factual findings, which are subject to deferential review under the clearly erroneous standard. *See United States v. Phelps*, 17 F.3d 1334, 1337 (10th Cir.1994) (citations omitted); *United States v. Garcia*, 987 F.2d 1459, 1461 (10th Cir.1993) (citations omitted).[5] A finding of fact is clearly erroneous only if it is "without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *Phelps*, 17 F.3d at 1337 (citation omitted). Our review of the record convinces us that the district court's findings are not clearly erroneous.

### 1.

There is ample evidence in the record that supports a finding that this offense was in fact committed for profit. There is testimony from several witnesses to the effect that there were arrangements made whereby the aliens were to pay the defendant the sum of $300.00 for transporting them to Denver. The district court expressly stated that it believed that this testimony could support a fair inference that the appellant committed this offense for profit. We have no basis by which to overturn this finding, and as a result, appellant's argument that he was denied a three-level reduction under § 2L1.1(b)(1) is without merit.

### 2.

We are also unpersuaded by appellant's argument with respect to his claim that he was a minor participant and was therefore entitled to a two-level reduction under § 3B1.2(b). Appellant challenges the district court's basis for denying him this downward departure. At sentencing, the court denied the request for a downward departure

"[b]ased on the trial and the [uncontroverted] fact that the defendant was driving the vehicle." Record on Appeal, at 72.

The commentary in the Sentencing Guidelines which explains or interprets a particular guideline is authoritative unless it conflicts with federal law. *See Stinson v. United States*, — U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The commentary to § 3B1.2 provides that the critical issue for purposes of deciding whether to grant a downward departure under this section must focus on the relative culpability of the respective actors. If one individual is "substantially less culpable" than another, then the former may be entitled to a downward departure; whether that departure should be two, three or four levels, however, is heavily dependent on the particular facts of the case. Thus, the threshold question is whether the district court's implicit finding that appellant was not less culpable than Torres was clearly erroneous. We think it was not.

Appellant's argument on this point is tied to his mere presence defense. As we noted above, however, there was evidence in the record that would permit the jury to find, as it apparently did, that appellant had knowledge that the aliens' presence was illegal and that he was aware that he could get in trouble for driving the vehicle. While Torres may have been the mastermind of this plan, we cannot say that appellant's actions in carrying out and executing this plan, with the knowledge that he possessed, made him any less culpable than Torres. In short, we are not left with the strong and definite impression that "a mistake has been made" which is necessary for us to reject the district court's findings of fact. *See United States v. Beaulieu*, 893 F.2d 1177, 1182 (10th Cir.), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Therefore, we conclude

---

**4.** Section 3B1.2(a) provides a four-level reduction if the defendant was a "minimal" participant in the criminal activity. In the case at bar, appellant claims only that he was entitled to the two-level reduction under § 3B1.2(b).

**5.** While appellant's counsel is correct that errors stemming from an erroneous interpretation of

the Guidelines themselves are subject to *de novo* review, akin to an error of statutory interpretation, *cf. United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir.1989), we perceive the alleged errors in this case to be related to the district court's factual findings and not its interpretations of the Guidelines per se.

that there was no error in denying appellant a downward departure under § 3B1.2(b).

The judgment and sentence of the district court are **AFFIRMED**.