68 F.3d 484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marco Antonio SALAZAR, Defendant-Appellant.
 No. 94-4190.
 United States Court of Appeals, Tenth Circuit.
 Oct. 12, 1995.
 
 Before ANDERSON, McKAY, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 McKAY, Circuit Judge.
 
 
 1
 Defendant was convicted of aiding and abetting possession of cocaine with intent to distribute, in violation of 18 U.S.C. 2 and 21 U.S.C. 841(a)(1), and carrying and using a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. 924(c). The district court denied a motion for a judgment of acquittal. On appeal, Defendant asserts that the Government presented insufficient evidence to convict him on either count. We affirm Mr. Salazar's conviction for the reasons that follow.
 
 
 2
 The evidence which the jury reasonably could have believed revolved around a sale of cocaine initiated by an agent of the DEA and an informant working for the DEA. The agent and the informant had arranged to purchase three kilograms of cocaine from individuals named Belford and Ramirez. The day the transaction was to take place, the agent and the informant went to Mr. Belford's apartment. The informant entered the apartment alone. Messrs. Belford, Ramirez, Salazar and one other individual were in the apartment. The informant had never seen nor heard of Mr. Salazar before. While inside the apartment, however, the informant asked to see the cocaine, and Mr. Ramirez showed him a cereal box containing brick-sized packages wrapped in foil.
 
 
 3
 The informant then left the apartment with Mr. Belford. At this point, the agent, the informant, and Mr. Belford left to view the purchase money and then returned once again to the apartment building. After discussing where to consummate the deal, the informant and Mr. Belford went into the apartment and found Messrs. Ramirez and Salazar still there. The informant discussed with Messrs. Belford and Ramirez where to do the deal. He and Mr. Belford then returned to the agent's car. Mr. Belford wanted the agent to come inside the apartment, but the agent refused. Mr. Belford then returned to the apartment by himself.
 
 
 4
 About five minutes later, Mr. Belford came out of the apartment, this time accompanied by Mr. Salazar. Mr. Salazar was carrying a brown paper bag. Both men got into the agent's car and drove to the location where another agent was waiting with the money. Mr. Salazar, in the back seat with the informant, sat the entire time with his hand in his jacket facing the informant. Once there, the agent asked if the paper bag contained the cocaine, and Mr. Belford responded affirmatively. The agent then took the bag from Mr. Salazar and found three brick-sized foil packages inside. He cut into each package and saw a substance that appeared to be cocaine.
 
 
 5
 Shortly thereafter, DEA officers moved in on the vehicle and arrested Messrs. Belford and Salazar. Mr. Salazar initially put his hands in the air but then dropped his hands before being pulled from the car. A loaded gun was found in his right jacket pocket. Mr. Salazar at no time spoke with anyone, and at no time prior to his arrest was his gun displayed.
 
 
 6
 Based on these facts, Mr. Salazar asserts that the Government did not present evidence sufficient to support his conviction. The appropriate standard of review for a sufficiency of the evidence claim requires this court to
 
 
 7
 view the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, "convinces us that a rational factfinder could reasonably have found" the appellant guilty of the crime charged beyond a reasonable doubt.
 
 
 8
 United States v. Chavez-Palacios, 30 F.3d 1290, 1293-94 (10th Cir.1994) (citations omitted).
 
 
 9
 Mr. Salazar first argues that he cannot be convicted of aiding and abetting possession of cocaine with intent to distribute because the Government did not present credible evidence indicating that he "knowingly" possessed a controlled substance, as required by 21 U.S.C. 841(a). This argument is, however, without merit. The record provides sufficient evidence from which a jury could reasonably determine beyond a reasonable doubt that Mr. Salazar knew he was in possession of a controlled substance. The jury had before it evidence that Mr. Salazar was in Mr. Belford's apartment on two occasions when the cocaine deal was discussed and that Mr. Salazar carried the cocaine to the agent's car and again was present in the car when Mr. Belford told the agent the cocaine was in the bag Mr. Salazar was carrying. The jury certainly could reasonably infer from Mr. Salazar's actions and from the surrounding circumstances that Mr. Salazar knew that the paper bag contained cocaine. Although the jury was not required to make this inference, we cannot say that the jury acted unreasonably in doing so.
 
 
 10
 Secondly, Mr. Salazar claims that the Government presented insufficient evidence to support his conviction for carrying and using a firearm during a drug trafficking crime. Under 18 U.S.C. 924(c) the government must prove: (1) the defendant committed the underlying crime; (2) the defendant "used" or "carried" a firearm; and (3) the defendant used or carried the firearm "during and in relation to" the drug trafficking crime. Mr. Salazar primarily argues that because no one ever saw the gun and because he never brandished it in any manner, he therefore did not "use" the gun within the meaning of the statute. Precedent from this court, however, requires a different result:
 
 
 11
 [A] defendant "uses" a firearm for purposes of section 924(c)(1) when the firearm (1) is readily accessible, (2) is an integral part of the criminal undertaking, and (3) increases the likelihood that the criminal undertaking would succeed.
 
 
 12
 United States v. Hall, 20 F.3d 1084, 1088-89 (10th Cir.1994).
 
 
 13
 In this case, the jury was presented with evidence that Mr. Salazar had a gun in his jacket pocket during the consummation of the drug deal. This clearly constitutes ready access.
 
 
 14
 The evidence also supports the conclusion that Mr. Salazar's gun was integral to the criminal undertaking. This court has stated that a firearm is an integral part of a drug trafficking offense where " 'the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction....' " Id. at 1089 (quoting United States v. Feliz-Cordero, 859 F.2d 250, 254 (2nd Cir.1988)). Here, Mr. Salazar had a gun in his jacket pocket while carrying a bag containing cocaine. Testimony also indicated that he kept his hand in his pocket and continually faced the informant while in the back of the DEA agent's car. The jury could reasonably conclude that the presence of the gun in Mr. Salazar's jacket pocket was more than a merely fortuitous occurrence completely unrelated to the drug transaction.
 
 
 15
 Finally, the jury could also reasonably conclude that Mr. Salazar's gun increased the likelihood that the criminal undertaking would succeed. As this court has previously noted, "Guns are a ubiquitous part of the drug trade, facilitating transactions by providing protection to dealers, drugs and money." United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir.1993). Given the circumstances surrounding Mr. Salazar's possession of a firearm, sufficient evidence existed for the jury to find that Mr. Salazar's gun increased the likelihood of a successful drug deal. Thus, this court affirms Mr. Salazar's conviction for carrying and using a firearm in relation to a drug-trafficking crime.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470