# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                    Elisabeth A. Shumaker
Clerk                                                    Chief Deputy Clerk

June 18, 1997


**TO:**    All recipients of the captioned order and judgment

**RE:**    96-1248, USA v. Rodriguez-Munguia
           June 17, 1997


Please be advised of the following correction to the captioned decision:

The lower court case number in the caption is incomplete. The correct number is: 95-CR-464-AJ. Please make the correction.

Very truly yours,

Patrick Fisher, Clerk


Susie Tidwell
Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

JUN 17 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EFRAIN RODRIGUEZ-MUNGUIA,

Defendant-Appellant.

Case No. 96-1248
(D.C. No. 95-CR-464-AJ)
(Dist.N.M.)

ORDER AND JUDGMENT*

Before PORFILIO, EBEL, and HENRY, Circuit Judges.

Defendant-appellant Efrain Rodriguez-Munguia challenges the sufficiency of the

evidence supporting his conviction for illegal reentry after deportation, a violation of 8

U.S.C. § 1326(a).   We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[1]

---

    *       This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    [1]       After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

I.  BACKGROUND

Because Mr. Rodriguez-Munguia has challenged the sufficiency of the evidence, we view the record in the light most favorable to the government.  See United States v. Chavez-Palacios, 30 F.3d 1290, 1293-94 (10th Cir. 1994).  Viewed in this light, the record indicates that Mr. Rodriguez-Munguia is a Mexican citizen who was convicted of possession of heroin for sale in a California state court in May 1990.  Following this conviction, the Immigration and Naturalization Service (INS) initiated deportation proceedings against him.

In May 1990, the INS issued an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien ("order to show cause") charging Mr. Rodriguez-Munguia with violating § 241(a)(11), of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) and directing him to appear for a hearing before an immigration judge.[2]  At trial, INS Special Agent Michael J. Desmond testified that he arrested Mr. Rodriguez-Munguia and served him with a notice of rights warning advising him of his rights to a deportation hearing and representation by counsel and his opportunity for voluntary departure.

Both the order to show cause and the notice of rights warning were admitted into evidence.  See Aple's Br. doc. 3 and 4.  The notice of rights warning requested Mr.

_____

[2]        When the order to show cause was issued, § 241(a)(11), 8 U.S.C. § 1251(a)(11) subjected aliens convicted of various drug offenses to deportation.  Section 241(a)(11) is now codified as amended as 8 U.S.C. § 1251(a) (2) (B) (i ) (1990).

Rodriguez-Munguia to choose between voluntary departure and a hearing before an immigration judge to determine whether he was subject to deportation. Mr. Rodriguez-Munguia chose the former, signing his name underneath the following statement: "I admit that I am in the United States illegally. I wish to give up my right to a hearing before an Immigration Judge and return to my home country on the first available transportation. I understand that I may be held in detention until my departure." Id. doc. 4.[3] Mr. Rodriguez-Munguia signed this document in the presence of Agent Desmond and another INS agent.

On May 21, 1990, an INS Immigration Judge entered an order of deportation regarding Mr. Rodriguez-Munguia. The order stated, "[U]pon the basis of respondent's admissions I have determined that he is deportable on the charge(s) in the Order to Show Cause. Respondent has made no application for relief from deportation . . . . It is ordered that respondent be deported from the United States to Mexico." Id. doc. 5.

On the same day, the INS issued a warning notification explaining the effect of the order of deportation. See id. doc. 6. The warning notification stated that if Mr. Rodriguez-Munguia wished to return to the United States, he should write the INS or American Consular Office nearest his residence abroad and ask how to obtain permission. It further stated that any deported person who returned to the United States without

---

[3]     The notice of rights warning was set forth in English and Spanish. Mr. Rodriguez-Munguia signed under the Spanish version.

permission was guilty of a felony. The warning notification was signed by Mr. Rodriguez-Munguia and INS detention enforcement officer Christopher Smith. Officer Smith testified at trial, explaining the form, identifying his signature, and stating that the form indicated that he had personally served it on Mr. Rodriguez-Munguia. See Rec. vol. II at 78-83.

At trial, the government also presented evidence regarding Mr. Rodriguez-Munguia's alleged deportation. The government introduced a warrant for deportation, signed by INS Border Patrol Officer David Picazo. The warrant stated that Mr. Rodriguez-Munguia was deported from the United States at Calexico, California on May 22, 1990 and that Officer Picazo witnessed Mr. Rodriguez-Munguia's departure. It also contained a right thumb print and the signature "Efrain Rodriguez" over the line "signature of person fingerprinted." See Aple's Br. doc. 7.

Officer Picazo testified regarding INS deportation procedures. Although he acknowledged that he had no independent recollection of Mr. Rodriguez-Munguia's deportation, he explained his routine practices at the time. He stated that after the completion of INS deportation procedures, aliens were held at the El Centro Federal Processing Center. Prior to deportation, Officer Picazo said, he would verify each alien's identity with a picture from his or her INS file and take a thumb print. According to Officer Picazo, individuals who were subject to deportation were then transported to the

Mexican border by bus, "and then we open a secure gate and they walk across into Mexico." Rec. vol. II at 87.

On cross-examination, Officer Picazo stated that he "completed" the warrant for deportation for Mr. Rodriguez-Munguia at the El Centro, Processing Center, which is fourteen miles from the Mexican border. See id. at 90. However, on redirect examination, he explained that it was his practice to actually witness individuals subject to deportation "walk across the border." Id.

In July 1995, the INS discovered Mr. Rodriguez-Munguia in the custody of the Colorado Department of Corrections, where he was serving a sentence for violating probation in a felony menacing case.[4] The government offered into evidence an INS form, a Certification of Nonexistence of Record, indicating that INS records contained "no evidence of the filing of an application for permission to reapply for admission to the United States after deportation, or the granting of such permission, relating to Efrain Rodriguez-Munguia." Aple's Br. doc. 10. The government then presented an expert in the comparison of fingerprints. The expert testified that the fingerprint exemplars taken from Mr. Rodriguez-Munguia in 1995 matched the thumb print on the May 22, 1990

---

[4] In Colorado, "[a] person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury." Col. Rev. Stat. § 18-3-206 (1990). Menacing committed by the use of a deadly weapon is a felony. Id.

warrant of deportation for Mr. Rodriguez-Munguia identified by Officer Picazo. See Rec. vol II at 92-99; Aple's Br. doc. 8.

At the close of the government's case, Mr. Rodriguez-Munguia moved for a judgment of acquittal. The district court denied the motion and submitted the case to the jury, which convicted Mr. Rodriguez-Munguia of violating 8 U.S.C. § 1326(a) by re-entering the United States illegally after deportation.[5] The district court sentenced Mr. Rodriguez-Munguia to sixty- three months' imprisonment followed by three years' supervised release.

## II. DISCUSSION

On appeal, Mr. Rodriguez-Munguia contends that there was insufficient evidence to support his conviction. As noted, in assessing a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government in order to

---

[5] The indictment against Mr. Rodriguez-Munguia actually charged him with violating 8 U.S.C. § 1326(a) and (b)(2). Section 1326(b)(2) authorizes longer sentences for aliens who re-enter the United States after having been convicted of aggravated felonies. The government alleged that Mr. Rodriguez-Mungia's 1990 California conviction constituted an aggravated felony.

Prior to trial, Mr. Rodriguez-Munguia filed a motion to strike surplusage from the indictment, arguing that the California felony conviction was not an element of the alleged offense. Instead, he said, the felony conviction was a sentencing factor that could not be considered by the jury. The district court agreed. It excluded evidence of the felony conviction from presentation to the jury.

This court has recently adopted the same analysis, holding that 8 U.S.C. § 1326(b)(2) "is a sentencing enhancement provision rather than a separate offense." See United States v. Valdez, 103 F.3d 95, 98 (10th Cir. 1996).

determine whether all the evidence, both direct and circumstantial, together with all the reasonable inferences to be drawn therefrom, 'convinces us that a rational fact finder could reasonably have found' the appellant guilty of the crime charged beyond a reasonable doubt." Chavez-Palacios, 30 F.3d at 1293-94 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)).

In order to establish a violation of 8 U.S.C. § 1326(a), the government must establish the following elements beyond a reasonable doubt: (1) that the defendant is an alien; (2) that the defendant was arrested and deported; (3) that the defendant voluntarily reentered, attempted to reenter, or was found in the United States; and (4) that the reentry was without the permission of the Attorney General. See United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994). In challenging the sufficiency of the evidence supporting his conviction, Mr. Rodriguez-Munguia focuses on the first two elements, contending that the evidence does not establish either alienage or deportation.

## A. Alienage

With regard to alienage, Mr. Rodriguez-Munguia invokes the Ninth Circuit's decision in United States v. Meza-Soria, 935 F.2d 166 (9th Cir. 1991). There, the Ninth Circuit held that a determination in an INS proceeding that an individual is an alien does not conclusively establish that fact in a criminal proceeding. The Ninth Circuit based this holding on the different burdens of proof placed on the government in the two proceedings--by clear and convincing evidence in deportation proceedings and beyond a

7

reasonable doubt in criminal matters. Thus, the court said, the defendant in a criminal proceeding in which alienage is an issue may collaterally attack a finding of alienage in an administrative proceeding.

Meza-Soria is distinguishable from the instant case. Here, the INS does not rely solely on a finding by an immigration judge to establish that Mr. Rodriguez-Munguia is an alien. Instead, the INS points to Mr. Rodriguez-Munguia's own admission of alienage in the notice of rights warning. See Aple's Br. doc. 4. That admission is sufficient for a rational fact finder to conclude beyond a reasonable doubt that Mr. Rodriguez-Munguia is an alien.

### B. Deportation

As to deportation, Mr. Rodriguez Munguia focuses on Agent Picazo's admission that he had no independent recollection of his leaving the United States in May 1990. Mr. Rodriguez-Munguia also notes that Agent Picazo admitted that he "completed" the warrant for deportation at the El Centro Processing Center, fourteen miles from the Mexican border. See Rec. vol. II at 90. Accordingly, Mr. Rodriguez-Munguia contends, "[I]t cannot be reasonably said that substantial evidence of deportation was presented." Aplt's Br. at 11.

We are not persuaded by this argument. As the government has noted, Agent Picazo also testified that it was his habit and routine to accompany deportable individuals on a bus from the El Centro Processing Center to the Mexican border and to "see them

walk across the border." Rec. vol. II at 90. The jury could reasonably rely on this testimony to conclude beyond a reasonable doubt that Agent Picazo complied with this practice on this occasion and that Mr. Rodriguez-Munguia left the United States and entered into Mexico in May 1990. See Fed. R. Evid. 406 (providing that "[e]vidence of the habit of a person or the routine practice of an organization . . . is relevant to prove that the conduct of the person or the practice of the organization on a particular occasion was in conformity with the habit or routine practice"); Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986) (affirming district court's admission of habit evidence under Fed. R. Evid. 406)); Meyer v. United States, 638 F.2d 155, 156-57 (10th Cir. 1980) (same). Accordingly, just as with the element of alienage, we conclude that the evidence introduced at trial is sufficient to support the element of deportation.

## III. CONCLUSION

We therefore AFFIRM Mr. Rodriguez-Munguia's conviction for violation of 8 U.S.C. § 1326(a).

The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge

9