**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GERALD LEE ESTEP,

      Defendant-Appellant.

No. 03-2284
(D.C. No. CR-02-1271 MV)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

Gerald Lee Estep was convicted by a jury of one count of assaulting an

Indian woman in Indian country with a dangerous weapon with intent to do bodily

harm in violation of 18 U.S.C. §§ 1152 and 113(a)(3), and two counts of

aggravated sexual abuse of an Indian woman in Indian country in violation of 18

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. §§ 1152, 2241(a), and 2246(2)(A) & (2)(B).  On appeal, Mr. Estep contends the government failed to present sufficient evidence that he either committed assault with a dangerous weapon with intent to do bodily harm or committed aggravated assault by forcing or threatening the victim to engage in sexual acts.  He also maintains the district court violated his Sixth Amendment right to a jury trial when it enhanced his sentence four levels based on findings that Mr. Estep's victim sustained serious bodily injury, *see* U.S.S.G. § 2A3.1(b)(4), and that he obstructed justice, *see* U.S.S.G. § 3C1.1.  We affirm.

On July 6, 2002, Frederica Benally hitchhiked from Window Rock, Arizona to Gallup, New Mexico to visit with Gary O'Dell.  Ms. Benally met Mr. O'Dell and his friend, Mr. Estep, at the American Bar in Gallup at approximately 7:00 p.m.  Mr. O'Dell and Mr. Estep enjoyed pitchers of beer at a booth while Ms. Benally drank alone at the bar.  After patronizing a second establishment, Mr. O'Dell and Mr. Estep offered Ms. Benally a ride.  As Mr. Estep was driving, Ms. Benally and Mr. O'Dell began to argue.  Mr. O'Dell threw a beer can at Ms. Benally, which hit her in the chest and spilled into her lap.  He then got out of the car and walked away.

Ms. Benally moved to the front of the vehicle with Mr. Estep, expecting he would drive her to a motel where she could spend the night.  Instead, he turned down a dirt road and stopped in a remote area.  Mr. Estep opened the front

passenger door, struck her on the right side of her head with a football-sized rock, and demanded that she remove her clothes. Ms. Benally stepped out of the vehicle and swung her back pack at her assailant. During the struggle, Mr. Estep repeatedly attacked Ms. Benally with the rock, striking her two more times on the head and once on her right arm.

Hoping to dissuade him, Ms. Benally told Mr. Estep she was menstruating. He told her that he had a gun and would kill her. Afraid, Ms. Benally decided to cooperate and sat down on the passenger side of the front seat of the vehicle. She removed her clothes as directed by Mr. Estep and he began to kiss and fondle her. When asked whether she liked it, Ms. Benally testified that she answered "yes" because she feared for her life. Mr. Estep proceeded to have sexual intercourse with her. *Id*. During this time, she placed her fingerprints on the rear view mirror as evidence that she had been in the car. She also left a box of maxi pads, the maxi pad she had been wearing, and several hair bands at the scene, hoping those items would be recovered by law enforcement.

When Mr. Estep was finished, he allowed Ms. Benally to get dressed and he drove back toward town. Ms. Benally told him she had to use the restroom and he took her to his girlfriend's house. Ms. Benally exited the vehicle, ran to a nearby house, reported what had occurred to the occupant, and called 911. An ambulance transported her to the Gallup Indian Medical Center, where she was

treated for three large contusions to her head. While there, she informed the police she had been raped and described the location of the incident. The officers visited the crime scene and discovered the items Ms. Banally had left and a large rock.

Because the incidents at issue occurred on Indian allotment land within the boundaries of the Navajo Indian Reservation, Federal Bureau of Investigation (FBI) agents led the investigation. They visited Mr. Estep at his residence several hours after the incident to question him regarding Ms. Benally's complaints. In response to the agents' inquiries, Ms. Estep wrote three different statements. Ultimately, he confessed he had sex with Ms. Benally against her will. He did not admit he hit her with a rock or threatened her with a gun.

On July 8, 2002, the FBI transported Mr. Estep to the federal courthouse for his Initial Appearance. During the trip from Gallup to Albuquerque, Mr. Estep announced he was willing to tell the whole truth about the incident. After the agents provided a Miranda warning, Mr. Estep wrote another statement, this time admitting he had struck Ms. Benally on the head with a rock and threatened her with a gun. He added that he did not actually have a gun at the time and asserted his actions were the result of excessive alcohol consumption.

We review the record for sufficiency of the evidence *de novo*. *United States v. Chavez-Palacios*, 30 F.3d 1290, 1294 (10th Cir. 1994). "Evidence is

sufficient to support a criminal conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States. v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994). We "presume the jury resolved evidentiary conflicts in favor of the prosecution, and we defer to the jury's resolution." *United States v. Roberts*, 185 F.3d 1125, 1140 (10th Cir. 1999); *see also United States v. McKissick*, 204 F.3d 1282, 1289-90 (10th Cir. 2000).

Mr. Estep contends the evidence was insufficient to establish he assaulted his victim with a dangerous weapon under 18 U.S.C. § 113(a)(3) because it was "inherently improbable" that he used the rock introduced at trial to strike Ms. Benally. We disagree. Ms. Benally testified that Mr. Estep hit her at least three times with a large rock similar to the one the government introduced into evidence. Both the emergency medical technician (EMT) who responded to Ms. Benally's 911 call and the treating emergency room physician testified that Ms. Benally suffered injuries to her head consistent with being struck by a hard object. Moreover, Ms. Benally told the EMT and the doctor that her assailant had hit her on the head with a rock. Indeed, law enforcement officers recovered a rock that "appeared to be out of place" at the crime scene matching the description of the rock provided by Ms. Benally. Most importantly, Mr. Estep

himself confessed that he struck Ms. Benally two or three times with a rock.  This evidence was clearly sufficient to support the verdict.

Mr. Estep also maintains there was insufficient evidence that he used force or threatened Ms. Benally or placed her in fear of death or serious bodily injury in violation of 18 U.S.C. § 2241(a).  In effect, he contends the government failed to prove that the sexual acts that he and Ms. Benally engaged in were not consensual.  As detailed above, however, ample evidence supported the jury's conclusion that Mr. Estep used force – specifically, a rock – to cause Ms. Benally to engage in sex acts with him.  Mr. Estep admitted that the sex "was against [sic] her will," he "asalted [sic] and raped" Ms. Benally, he "hit her with a rock 2 or 3 times, then told her to take off her cloths [sic] then had sex with her."  Aple. Br. at 12, 15 (citing Gov. Exs. 11 and 13).  He also confessed he told her he "had a gun."  *Id*. at 15 (citing Gov. Ex. 13).

Mr. Estep also claims the district court violated his Sixth Amendment rights by imposing a sentence exceeding the maximum authorized solely by the jury verdict and his admissions.  *See United States v. Booker*, 125 S. Ct. 738, 756 (2005); *Blakely v. Washington*, 124 S. Ct. 1531, 2536 (2004).  He specifically maintains his sentence could only be enhanced if either a jury had found or he had admitted that he inflicted serious bodily injury on his victim within the meaning of § 2A3.1(b)(4), or obstructed justice pursuant to § 3C1.1.

Mr. Estep was found guilty as charged of one count of assault with a dangerous weapon and two counts of aggravated sexual abuse. Based on an undisputed criminal history category of I and a base offense level of 27, a guideline range of 70 to 87 months was the maximum penalty permitted on the basis of the jury verdict and Mr. Estep's prior convictions. *See* U.S.S.G. ch. 5, pt. A (Sentencing Table). At sentencing, however, the district court enhanced Mr. Estep's guideline range by four levels pursuant to a finding that he threatened his victim with a gun, § 2A3.1(b)(1), by two levels due to a finding that he inflicted serious bodily injury on his victim, § 2A3.1(b)(4), and by two levels based on a finding that he obstructed justice, § 3C1.1. As a result, his total offense level was calculated at 35, mandating a guidelines range of 168 to 210 months incarceration. The district court sentenced him to 168 months imprisonment.

Mr. Estep does not challenge his four-level enhancement under § 2A3.1(b)(1) because causing a victim to engage in sex acts via force or threats is an element of aggravated abuse, which the jury found Mr. Estep guilty of beyond a reasonable doubt. Since the maximum penalty he could receive solely on the basis of his admissions and jury-found facts (including the four-level enhancement under § 2A3.1(b)(1)) was 135 months, Mr. Estep submits the 168 month sentence imposed by the district court violates the Sixth Amendment.

Because Mr. Estep did not raise a Sixth Amendment claim in the district

court, we review for plain error. FED. R. CRIM. P. 52(b); *see also United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005). To establish plain error, Mr. Estep must demonstrate there was (1) error (2) that was plain and (3) affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). If Mr. Estep satisfies his burden of establishing the first three prongs of the plain error test, we may exercise our discretion to correct the error if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)); *Gonzalez-Huerta*, 403 F.3d at 732.

There is little doubt Mr. Estep has satisfied the first two prongs of the plain error analysis. The district court committed constitutional error when it found Mr. Estep inflicted serious bodily injury on his victim and obstructed justice, and mandatorily enhanced his sentence by an additional four levels. *Booker*, 125 S. Ct. at 749. Moreover, the error is now "plain." *Johnson*, 520 U.S. at 468.

Mr. Estep bears the burden of establishing that the constitutional error affected his substantial rights. *Dazey*, 403 F.3d at 1175. In order to so demonstrate, "a defendant must show a 'reasonable probability' that the defects in his sentencing altered the result of the proceedings." *Id.* (citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004)). We have held that a defendant may

meet this burden in at least two ways:

> First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights . . . . Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that . . . the district court judge would reasonably impose a sentence outside the Guidelines range.

*Id.* While Mr. Estep does not point to any evidence that the judge believed his guidelines range was excessive in light of the facts found by the court, he does contend there was insufficient evidence for a jury to find beyond a reasonable doubt that he caused his victim serious bodily injury as required for a mandatory enhancement pursuant to § 2A3.1(b)(4). As detailed *supra*, however, the record makes it clear the government introduced overwhelming evidence proving Mr. Estep caused his victim serious bodily injury by repeatedly striking her in the head with a rock.

The record also overwhelmingly supports the two-level enhancement for obstruction of justice. This increase is appropriate if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The Commentary to this section indicates the enhancement was intended to apply, *inter alia*, to defendants who provide false statements to law enforcement during official investigations, *id.* cmt. n.4(g), and

in cases where the defendant commits perjury. *Id*. cmt. n.4(b).

Mr. Estep initially provided written confessions to FBI agents admitting certain elements of the charged crimes and ultimately confessed to all the elements of the charged crimes. Nonetheless, at trial, he testified that his confessions were coerced, recanted his earlier statements, and offered a completely different version of events which the jury did not believe. The evidence overwhelmingly demonstrated that Mr. Estep's testimony concerning his sexual encounter with Ms. Benally was false. He has not shown that a jury applying a reasonable doubt standard would conclude any differently. As a result, he has not established that cognizable plain error existed in his case.

We **AFFIRM** Mr. Estep's conviction and sentence.

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Circuit Judge
