**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold McMAHON, Defendant-Appellant.**

**No. 76-1604.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 5, 1977.

Decided Aug. 29, 1977.

Rehearing Denied Oct. 26, 1977.

---

Anthony F. Avallone, Las Cruces, N.M., for defendant-appellant.

Charles F. Sandoval, Asst. U. S. Atty., Albuquerque, N.M. (Victor R. Ortega, U. S. Atty., Albuquerque, N.M., on the brief), for plaintiff-appellee.

Before SETH, HOLLOWAY and BAR-RETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellant Harold McMahon, his wife Kathy McMahon, and Magdaleno Barboa were indicted for transportation of Mexican nationals in the United States in violation of 8 U.S.C. § 1324(a)(2)[1] and 18 U.S.C. § 2.

---

1.  8 U.S.C. § 1324(a)(2) (1970) provides in pertinent part that:

 (a) Any person, including the owner, operator, pilot, master, commanding officer,

agent, or consignee of any means of transportation who—

\* \* \* \* \* \*

 (2) knowing that he is in the United States in violation of law, and knowing or having

Count I of the indictment alleged a conspiracy in violation of 18 U.S.C. § 371 and counts II, III, IV, and V alleged substantive violations of wilfully and knowingly transporting an alien named in each of the latter four counts. The case against defendant Harold McMahon was tried and submitted on the theory that he aided and abetted the commission of the substantive offenses.

A jury verdict of guilty on all counts was rendered as to each defendant. Defendant Harold McMahon appeals,[2] essentially arguing that: 1) the evidence was insufficient to submit the case against him to the jury; and 2) the trial court abused its discretion in denying his motion for severance. We must agree with defendant's challenge to the sufficiency of the evidence to sustain the criminal convictions and accordingly reverse.

I

*The Government's Case*

In considering such an appeal after a guilty verdict we must view the evidence in the light most favorable to the Government. So viewed, the evidence tended to show the following facts:

On the evening of January 28, 1976, Border Patrol Agents Goad and Woolford were stationed at the border checkpoint on Interstate 25 near Truth or Consequences, New Mexico. At about 8:00 p. m. a directional sensor device registered the passage of a vehicle on State Route 52.[3] (III, R., 16). The two agents got into their patrol car to intercept the vehicle at Exit 83, which is the

junction of I–25 and State Routes 52 and 85. As they were leaving their checkpoint, the sensor device on the radio of their car registered the passage of a second vehicle on SR 52. (Id. at 59).

At Exit 83 the agents observed a "white over blue" 1975 or 1976 Chrysler on SR 52 which went up the ramp onto I–25 going north. The agents observed that the Chrysler had two occupants and that a CB antenna was affixed to the Chrysler. (Id. at 59–60).

After waiting a "reasonable" length of time, the agents failed to observe a second vehicle. They returned to the checkpoint and about 30 to 45 minutes later again heard the sensor which monitored SR 52. As the agents got back into their patrol car, the sensor again registered a second vehicle passing on SR 52. When they approached Exit 83, the agents observed the same "white over blue" Chrysler on SR 52. Once again the Chrysler traveled up the ramp onto I–25 and went north. (Id. at 60–62).

The agents noticed a CB antenna on the Chrysler and connected this with the fact that they had not seen the second vehicle after the earlier alert. They made a "fast run" east on SR 52 to a high point where they observed a pickup proceeding east on SR 52 away from the sensor. They pursued the pickup and stopped it on SR 52. (Id. at 61–62).

■ The driver of the pickup was Priscilla Maes.[4] The other passengers in the cab of the pickup were Magdaleno Barboa and Socorro Robles Robles, a Mexican national.

reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

\* \* \* \* \* \*

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, . . .

**2.** The defendant made proper motions challenging the sufficiency of the evidence at trial.

**3.** The checkpoint at Truth or Consequences is the agents' "primary duty station." They also monitor the sensor device set up on SR 52. The sensor is a directional instrument that only records traffic on SR 52 going northwest towards I–25.

**4.** Ms. Maes also referred to herself as "Priscilla Barboa" and used that name in her deposition. However she stated in her deposition that she was not married to Magdaleno Barboa. Ms. Maes was also indicted as a co-conspirator, but she plead guilty before trial.

In the camper shell covering the bed of the pickup, the agents found eleven other Mexican nationals.[5]

After apprehending the pickup full of aliens, the agents returned to I–25 and proceeded north in search of the Chrysler. It was observed about five miles north on I–25. The car had turned around and was heading south. The agents saw the Chrysler pull off the road and stop on the side. Upon approaching the Chrysler, the agents found defendant Harold McMahon seated on the driver's side and Kathy McMahon just outside the car. (Id. at 63–64, 76–77).

Investigations by the agents revealed that the pickup truck was registered in the name of Priscilla Maes and the Chrysler was registered to a Ford leasing agency. Both the pickup and the Chrysler were found to contain a CB radio. In her deposition, Priscilla Maes (Barboa) stated that Magdaleno Barboa was the brother of Kathy McMahon.

The Government argued the case to the jury on the theory that the McMahon Chrysler served as a "scout car" to warn the pickup truck of the location of the border patrol agents, that the two vehicles communicated by use of the CB radios, and that when the Chrysler was found going south on I–25, it had turned around to check what had happened to the pickup. (Id. at 193–94).[6]

The defendants moved for a directed verdict of acquittal, which was denied. The defense presented no evidence and stood on its challenge to the Government's proof, which we now consider.

## II

### The substantive offenses

■ In considering the appeal the evidence must be viewed in the light most favorable to the Government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, on which the jury could find the defendant guilty beyond a reasonable doubt. *United States v. Twilligear,* 460 F.2d 79, 81–82 (10th Cir.).

■ Conviction of the substantive offenses requires proof that the defendant committed the offense or aided and abetted its commission within the meaning of 18 U.S.C. § 2 (1970). And to be guilty as an aider and abettor, it is necessary that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919; *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.).

■ The proof relied on by the Government as establishing the substantive offenses on the "lead car-load car" theory consisted of these items: the presence of the Chrysler driven by McMahon in the vicinity of the pick-up after the successive sensor signals; that the road they used avoided the checkpoint; the brother-in-law relationship between the defendant and Barboa, and passenger in the pick-up; proof that twice when Barboa talked into the radio the pick-up turned around; and the fact that the Chrysler had turned around and was found going south on I–25. (Brief of Appellee, 7–8).

---

5. 8 U.S.C. § 1324(a)(2) (1970) requires that the Government prove that the aliens are not lawfully within the United States. This was done at trial by asking each of the six aliens who testified whether they had any "papers." Each alien answered "no." Government counsel then asked each alien whether "As far as you know, are you here illegally?" Each of the aliens responded "yes" to that question.

6. The "lead car–load car" modus operandi has been noted in several cases. *E.g., United States v. Barnard,* 553 F.2d 389, 392 (5th Cir.); *United States v. Vital-Padilla,* 500 F.2d 641, 643 (9 Cir.); *United States v. Portillo,* 469 F.2d 907, 909–10 (9th Cir.); *United States v. Figueroa-Espinoza,* 454 F.2d 590, 591 (9th Cir.); *United States v. Baca,* 368 F.Supp. 398 (S.D.Cal.).

We must take into account all the circumstantial evidence. However, there was no proof of any incriminating contacts by defendant with the load car occupants.[7] The proof in no way developed the connecting circumstances shown in *United States v. Barnard,* supra, 553 F.2d at 391–93. Among other things, the evidence in *Barnard* showed personal belongings in the load car containing the last name of the lead car driver, the wallet of a lead car passenger found in the load car, license numbers showing that the cars were from the same county in another area, and variation of the speed of the lead car to maintain a constant distance ahead of the load car while they were being followed for 10 or 15 miles.

■ In our case, however, the observation of the Chrysler in the general vicinity and its movements do not reasonably support an inference that the defendant was aiding the movement of the aliens with the requisite knowledge to establish criminal intent. Mere presence in such circumstances may create suspicion, but it does not establish participation or guilt. *Glover v. United States,* 306 F.2d 594, 595 (10th Cir.); *Lucero v. United States,* 311 F.2d 457, 459 (10th Cir.), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767.

Nor do we find that the other evidentiary items relied on add substance to the Government's case. As noted, the brother-in-law relationship of defendant to Barboa was shown. The relationship of a passenger in the lead car as son of the owner of the load car was recited in the *Barnard* case, supra, 553 F.2d at 393, but it was only one factor supported by numerous other items of circumstantial evidence. Standing alone or only with other tenuous proof as it is here, the relationship is not sufficient evidence of the criminal offense. See *United States v. Thomas,* 468 F.2d 422, 425 (10th Cir.).

The remaining points are that the vehicles both had CB radios and that after Barboa talked into the radio twice, the pickup in which he was riding turned around. There was, however, no proof to permit the inference that the communication was with the Chrysler, and no showing that the CB in the Chrysler was used or operative, although the agents admitted they had an opportunity to check the radio.

In sum, we are convinced that the Government's proof against defendant McMahon on the substantive counts raises only suspicion based on his presence in the area, which is insufficient to sustain his convictions. *United States v. Wright,* 450 F.2d 992, 994 (10th Cir.).

### III

### *The conspiracy conviction*

■ The gist of the conspiracy offense is agreement among the conspirators to commit the offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy. *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128. Defendants may not be convicted of a conspiracy charge without proof of their knowledge of a conspiracy and their participation in it. See id. at 210, 61 S.Ct. 204; *Martin v. United States,* 100 F.2d 490, 496 (10th Cir.), cert. denied, 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1048; *United States v. Womack,* 454 F.2d 1337, 1345 (5th Cir.). The unlawful agreement is, of course, frequently not susceptible of direct proof and may be inferred from statements, acts and circumstances. *Martin v. United States,* supra at 495–96.

■ What we have said about the deficiencies in the Government's case on the substantive counts applies to the conspiracy charge as well. Giving full consideration to the whole of the circumstantial evidence, it showed only the presence of the defendant in the area and suspicious acts. His con-

---

7. The only evidence of prior contacts was in the testimony of Priscilla Maes. She said that the last time she had seen Kathy or Harold McMahon before the January 28, 1976, arrests was in December at the home of the Mother of Kathy McMahon and Barboa. When Barboa came home, she said they came home to see the Mother. (III, R., 146–47, 151–52). Priscilla Maes said she had not talked to the McMahons on January 28. (Id. at 147).

 

duct was not connected up with the parties actually transporting the aliens, and no incriminating contacts with them was shown. The evidence against this defendant creates mere suspicion or insinuation of guilt of conspiracy, which is not enough to sustain such a conviction. *United States v. Butler*, 494 F.2d 1246, 1254 (10th Cir.).

Accordingly, the judgment must be reversed and the case is remanded for dismissal of the indictment as to the defendant.