**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kuldip Singh MUNDI,
Defendant–Appellant.**

No. 87–1289.

United States Court of Appeals,
Ninth Circuit.

Argued April 6, 1989.

Submitted June 6, 1989.

Decided Dec. 21, 1989.

---

Michael T. Kenney, Albert A. Newton, Santa Ana, Cal., for defendant-appellant.

Joseph P. Russoniello, Sanford Svetcov, Dept. of Justice, U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.

REINHARDT, Circuit Judge:

Kuldip Singh Mundi appeals his convictions for twenty-five counts of wire fraud, one count of selling stolen property and one count of conspiracy. The charges stem from a complex scheme, allegedly devised and executed by Mundi, in which he performed unauthorized and fraudulent exchanges of airline tickets purchased in Nigeria for tickets on airlines operating in the United States. He raises a number of objections to the proceedings below. We have considered each and affirm his convictions, except as to one count.

A. The *McNally* Claim

█ Mundi claims first that the district court's instructions to the jury on the wire fraud counts failed to conform to the standard established by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).[1] We review a claim of error in a jury instruction by looking to "the adequacy of the entire charge ... in the context of the whole trial." *United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir.1984). We review de novo the question whether the instructions correctly explained the law and the elements of fraud. *United States v. Stenberg*, 803 F.2d 422, 433 (9th Cir.1987).

---

**1.** Although *McNally* was decided after Mundi was convicted, we are bound by its construction of the federal wire fraud statute. *See United States v. Hilling*, 863 F.2d 677, 678 (9th Cir. 1988).

Considering the fraud instructions as a whole, we note first that there is some language which might imply that the jury could convict Mundi even if it found that his scheme had not been intended to cause anyone a deprivation of money or property. A conviction based upon such a finding would violate *McNally*. *See* 483 U.S. at 356, 107 S.Ct. at 2879. We are aware that the district judge said at one point that a "scheme to defraud *normally* contemplates ... a disadvantage to the defrauded person" and that the injury in this case "*could* be" the airlines' loss of payment or delay in payment on the tickets Mundi exchanged. Nonetheless, we conclude that the entire instruction rendered it impossible for the jury to convict Mundi without actually finding that he had deprived the airlines of money or property. The court's description of the elements of fraud left no doubt that a verdict of guilty could not be returned unless the jury found that Mundi had "acted to carry out the scheme with the intention of obtaining money or property by carrying out the scheme to defraud."

Moreover, in analyzing a claim of error in jury instructions, we may look beyond the instructions themselves and examine the indictment and the entire trial in context. *Marabelles*, 724 F.2d at 1382; *see also United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975); *United States v. Perholtz*, 836 F.2d 554, 559 (D.C.Cir.1987). In this case, it is clear from the indictment, as well as from the manner in which the purportedly fraudulent scheme was presented at trial, that the scheme alleged was that Mundi defrauded the airlines of "money or property." The indictment alleged, for example, that Mundi "did devise and intend to devise a scheme and artifice to defraud and deceive in the obtaining of money or things of value [2] by means of false and fraudulent pretenses ...," that he fraudulently obtained air coupons, and that he exchanged altered multiple-page air coupons or invalid coupons for values greater than they were worth.

Furthermore, testimony of airline officials described with some detail how such exchange schemes as those Mundi was accused of operating deprive the airlines of money and property. These officials identified several means by which the airlines are injured in these schemes—through delayed payments, overpayments to other airlines, underpayments from other airlines, and negotiated settlements with other airlines that result in a particular airline receiving less than the full value of the tickets issued by the travel agencies participating in these schemes.

These facts, coupled with the fact that the court's instructions specifically required the jury to find that Mundi had deprived someone of money or property, are sufficient to cause us to reject the argument that the fraud instructions were insufficient under *McNally*.

## B. The "Directed Verdict" Instruction

■ Mundi next challenges a portion of the trial court's instruction in which, after describing the system through which the airlines exchange tickets, the court allegedly stated that disruption of the system automatically constituted fraud. Mundi claims this instruction amounted to a partial directed verdict in favor of the government, a practice proscribed in criminal prosecutions. *See United States v. Goetz*, 746 F.2d 705, 708 (11th Cir.1984).

Mundi's argument is incorrect. Applying the type of review we described *supra* in Part A to the relevant portions of the court's instructions, we conclude that the district judge did not take any part of the case from the jury. First, the court instructed the jurors in general terms that it was their views and their "recollection of the evidence" that mattered, not the court's own. Second and more important, upon Mundi's objection to the portion of the instruction upon which he now relies for his claim of error, the court clarified its instruction, telling the jurors specifically that

---

**2.** Note that the Supreme Court has read the mail fraud statute's use of defraud as signifying "the deprivation of something of value by trick, deceit, chicane or overreaching." *Carpenter* 108 S.Ct. 316, at 321 (citing *McNally*). Thus, the absence of the word "property" is immaterial.

"all the facts [we]re for [them] to decide," and that they had to determine for themselves "what the scheme was, if there was any scheme; what the advantages [to Mundi] would be on the one hand and the disadvantages [to the airlines] on the other." Finally, the court gave extensive and explicit instructions concerning Mundi's defense theories.

It is thus clear from the record that the court did not direct a verdict in favor of the government, in whole or in part, and indeed carefully preserved all factual issues for determination by the proper finder of fact, in this case, the jury.

### C. The Admission of Evidence of Other Schemes

■ Mundi's original indictment alleged that his scheme involved eleven travel agencies; the superseding indictment under which he was ultimately tried named only one agency specifically although, as the government correctly notes, it did speak of Mundi's scheme in terms that indicated a far wider scope of operations. At Mundi's trial, and over his objection, the court allowed testimony which named several travel agencies not specifically mentioned in the indictment, and which discussed Mundi's scheme with respect to them. Mundi now claims that the court erred in admitting this evidence, inasmuch as the evidence was irrelevant and prejudicial, and deprived him of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Miller,* 471 U.S. 130, 140, 105 S.Ct. 1811, 1817, 85 L.Ed.2d 99 (1985).[3]

We review de novo the question whether the evidence concerning the travel agencies not specifically named in the indictment was "other crimes" evidence beyond the scope of the indictment and admissible only in limited circumstances under Fed.R.Evid. 404(b). *See United States v. Soliman,* 813 F.2d 277, 278 (9th Cir.1987). A trial court's

decision to admit evidence is reviewed for an abuse of discretion. *Id.*

We agree with the government that the trial court did not err in admitting this evidence. Mundi himself admitted that his scheme involved a number of travel agencies; similarly, his indictment alleged that he exchanged tickets with "travel agents in the United States." In light of these facts, we think the government correct in its assertion that the evidence it presented was "inextricably intertwined" with, and "part of the same transaction" as, the conduct alleged in the indictment. *See Soliman,* 813 F.2d at 279 ("[e]vidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined' ") (quoting *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979)). Alternatively, since Mundi's defense largely concerned his lack of criminal intent, the evidence was admissible to show intent under Rule 404(b). *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988); *United States v. Faust,* 850 F.2d 575, 584–85 (9th Cir.1988); *Soliman,* 813 F.2d at 279.

The district court did not abuse its discretion in admitting the evidence concerning other travel agencies.

### D. The Sufficiency of the Evidence

■ Mundi's final contentions on appeal concern the sufficiency of the evidence on which the jury convicted him. Mundi twice moved for judgments of acquittal under Fed.R.Crim.P. 29, alleging the government's evidence to be insufficient. Both motions were denied. We review the denial of the Rule 29 motions and Mundi's challenge to the sufficiency of the evidence under the same standard, assessing whether, when viewed in the light most favorable to the government, the evidence adduced at trial was sufficient for a rational jury to find Mundi guilty beyond a reasonable

**3.** Mundi's *Miller* claim does not merit more than summary treatment. Our review of the record has revealed no evidence that the limited references to other agencies that Mundi mentions amounted to his being "tried on other charges." We thus treat his claim as essentially an evidentiary one.

doubt. *United States v. Bonanno*, 852 F.2d 434, 440 (9th Cir.1988). Having done so, we conclude that the trial court rightly denied Mundi's Rule 29 motions; the evidence was sufficient to sustain Mundi's convictions. We deal with his two principal contentions in turn.

Mundi argues that his fraud convictions must be overturned because there was insufficient evidence of his criminal intent and because Mundi claimed that he had relied on the advice of a lawyer that his scheme was legal. No lawyer testified on Mundi's behalf to corroborate his story. It was a story the jury was not required to believe. In any case, the critical inquiry here is not whether the evidence was conflicting, but whether the government offered evidence from which a rational jury could conclude beyond a reasonable doubt that Mundi intended to commit the fraud. *See Bonanno*, 852 F.2d at 440. Mundi admitted that his lawyer told him that, if he consulted the relevant airline ticketing entities, they would tell him his scheme violated their rules. Furthermore, the government elicited testimony from a travel agency employee who cooperated in the government's investigation that Mundi had advised him to leave the country if the scheme were uncovered. Based on these facts and the entire record before us, we conclude that the government amply carried its burden of demonstrating Mundi's intent to work a fraud.

### E. Count 26

■ Mundi argues that his conviction on Count 26 of the indictment, which charged a single count of selling stolen goods in violation of 18 U.S.C. § 2315, should be reversed because of trial errors, vagueness and confusion in the jury instructions, and errors in the entry of judgment. We agree. The confusion surrounding this count is sufficient to leave us in doubt whether the jury could have properly and clearly considered the evidence and elements of the offense in convicting Mundi.

Count 26 of Mundi's indictment clearly refers to § 2315. However, the caption of the indictment refers in relevant part to 18 U.S.C. § 2314, a statute which covers interstate transportation of stolen property, but lacks the so-called "barter or sale" requirement of § 2315.[4] There is no mention in the caption of § 2315. Moreover, at trial, the government referred to § 2314 in prosecuting Count 26 and in colloquies with the district judge on that count. And the defense, which proposed jury instructions for § 2314, contributed to the confusion. The judgment on Count 26 itself identifies § 2314 as the offense of which Mundi was found guilty, an error the government claims was merely clerical and could be remedied by a motion under Rule 36, Fed. R.Crim.P. But the confusion was obviously more than clerical; the government even briefed the wrong statute in its brief on appeal.[5] With so many errors occurring, we cannot assume that the error in the judgment was merely technical or clerical, and we cannot say with the requisite degree of confidence that the errors did not mislead and confuse the jury as to the charge against Mundi or the elements of the offense. Certainly, everyone else concerned was confused at one time or another. It is not unreasonable, therefore, to conclude that the jury may have been as

---

**4.** 18 U.S.C. § 2314 makes it a crime for an individual to "transport[ ], transmit[ ], or transfer[ ] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud."

18 U.S.C. § 2,15 applies to the individual who "receives, possc es, conceals, barters, sells, or disposes of any goods, wares, merchandise, securities or money of the value of $5000 or more ..., which have crossed a State or United States boundary after being stolen, unlawfully convert-

ed, or taken, knowing the same to have been stolen, unlawfully converted, or taken."

**5.** The government, in a letter to the court after our request for supplemental briefing, claimed that it had merely made some "mistaken references to § 2314 in [its] brief." This characterization of the brief is disingenuous, for the text of the brief clearly demonstrates that—at least at the time the brief was written—the government actually believed Mundi had been convicted of interstate transportation, rather than sale, of stolen property.

well.[6] Accordingly, we must reverse Mundi's conviction on Count 26.

For the above reasons Mundi's conviction is affirmed on all counts other than Count 26 and reversed on the latter count.

AFFIRMED IN PART, REVERSED IN PART.

---

**6.** It is possible that the jury convicted Mundi of transporting stolen goods although he was charged with selling or bartering such goods; or it could have convicted him of selling or bartering stolen goods without fully understanding what the elements of that offense involved.