**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff-Appellee,

v.

JOSE DE LA LUZ GARCIA-
MARQUEZ,

　　　Defendant-Appellant.

No. 97-2008
(D.C. No. 94-CR-549-JP)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

Defendant Jose de la luz Garcia-Marquez appeals his jury convictions for
conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C.
§ 846, and possession of marijuana with intent to distribute, in violation of 21
U.S.C. § 841(a)(1) and (b)(1)(D), 18 U.S.C. § 2. Defendant claims there was
insufficient evidence to convict him and he did not receive effective assistance of
counsel. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

I.

At approximately 12:45 a.m. on August 28, 1994, defendant drove into a border checkpoint between Las Cruces and Alamogordo, New Mexico. Agent Rodriguez approached defendant's vehicle to ascertain citizenship, and noticed a strong "masking" odor coming from inside the car. Rodriguez testified at trial that such masking odors are used to cover up the odor of narcotics. Defendant told Rodriguez he lived in El Paso, Texas. Rodriguez asked defendant why his vehicle bore a New Mexico license plate, and defendant stated his wife had recently purchased the car. Defendant produced a New Mexico certificate of title listing Carl C. Howard as the owner and seller of the vehicle, but the title did not list a buyer. Agent Sanchez later contacted Howard, who told her he had sold his car to an unknown Hispanic male. When Rodriguez asked defendant where he was going, defendant stated he was going to Alamogordo to pick up his wife at a park. Upon further questioning, defendant stated his wife was at a meeting with several friends. Defendant then became agitated and said he was going to pick up his wife at McDonald's in Alamogordo.

Rodriguez asked defendant for consent to inspect his vehicle with a dog and defendant gave his consent. Inspection of the vehicle revealed no drugs. As Rodriguez was accompanying defendant to the inspection area, he noticed a maroon Ford Taurus entering the checkpoint, no more than two minutes after

defendant's vehicle had entered the checkpoint. Both vehicles entered the checkpoint during the shift change of the border patrol and Agent Stack testified at trial that drug smugglers know when shift changes occur and that a checkpoint may be closed during that time.

Agent DeLaRosa questioned the driver of the Taurus, who was later identified as Eva Melchor-Gallardo. She gave conflicting answers to DeLaRosa's questions, and DeLaRosa asked for and obtained consent to look in the trunk of her car and to inspect the car with a dog. DeLaRosa asked Melchor-Gallardo if she was traveling with the car driven by defendant and she stated she was traveling alone. In the meantime, the dog had "alerted" to the gas tank of Melchor-Gallardo's car. Agents inspected the gas tank and noticed there were new bolts on the tank and tool scratches on the bottom of the tank. Agents then opened the gas tank and found approximately twenty-seven pounds of marijuana. They later found a gas can in defendant's car.

An inventory search revealed an envelope in Melchor-Gallardo's purse bearing the address of 8320 Mount Tibet Drive, El Paso, Texas, which was the same address as on defendant's driver's license. Stack found a pawn shop receipt in defendant's car bearing the signature of "Jose Melchor." Jose Melchor was later determined to be Melchor-Gallardo's nephew and defendant's stepson. Melchor testified at trial that he had driven his stepfather's car on several

occasions. Stack showed the pawn shop receipt to defendant and asked him to explain his relationship with Melchor-Gallardo. Defendant stated he knew Melchor-Gallardo "so so," that she was related to his stepson, and that it was a mere coincidence they were in the checkpoint at the same time.

At trial, defendant's wife testified she had been spending time in Roswell, New Mexico, during July and August of 1994 taking care of her father, and that on August 27, 1994, her brother took her to Alamogordo to meet her husband. She testified that Melchor-Gallardo was her former sister-in-law and her children's aunt. She further testified that although Melchor-Gallardo lived on Tropicana Street in El Paso, she had used the Garcias' address for Social Security purposes. Rodriguez and Stack testified as to their experience with "decoy cars." Rodriguez explained that a decoy will enter a checkpoint and attempt to arouse the suspicion of agents. The decoy will carry no contraband, but a car containing contraband will travel behind the decoy. The decoy hopes the agents will focus attention on his car and not check the following car as thoroughly.

## II.

### Insufficiency of Evidence

On a claim of insufficiency of the evidence, the court views the evidence in the light most favorable to the government in order to determine whether all of the evidence, both direct and circumstantial, together with reasonable inferences

-4-

to be drawn therefrom, convinces the court that a rational fact finder could reasonably have found the appellant guilty of the crime charged beyond a reasonable doubt. United States v. Chavez-Palacios, 30 F.3d 1290, 1293-94 (10th Cir. 1994). The court's review of the record is necessarily de novo. Id. at 1294.

To convict a defendant of conspiracy to possess with intent to distribute marijuana, the government must prove a conspiracy existed, that defendant knew the essential objectives of the conspiracy, and that defendant knowingly and voluntarily became a part of the conspiracy. United States v. Savaiano, 843 F.2d 1280, 1294 (10th Cir. 1988). Participation in a conspiracy may be inferred from a defendant's actions. Mere presence at the crime scene is insufficient evidence in itself, but is a factor which the jury may consider. The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt. Id. at 1294.

To convict a defendant of possession of marijuana with intent to distribute, the government must prove (1) defendant knowingly possessed a controlled substance; and (2) defendant possessed the substance with the specific intent to distribute it. United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992). Possession may be either actual or constructive. Generally, a person has constructive possession if he knowingly has ownership, dominion, or control over

the drugs and the premises where the drugs are found. The government, however, must show a sufficient nexus between the defendant and the drugs. Id. at 888.

"To be guilty of aiding and abetting a crime, the defendant must willfully associate himself with the criminal venture and seek to make it succeed through some action on his part." United States v. McKneely, 69 F.3d 1067, 1072 (10th Cir. 1995) (quoting United States v. Esparsen, 930 F.2d 1461, 1470 (10th Cir. 1991)).

The government submits the following evidence was sufficient to sustain defendant's convictions. Defendant and Melchor-Gallardo reached the checkpoint during a shift change, a time when checkpoints are sometimes closed. Agents noticed a strong deodorizing odor coming from defendant's car. Decoy cars, or "lead cars," seek to arouse agents' suspicions in order to divert attention away from "load cars" traveling behind. Melchor-Gallardo's vehicle, which was traveling behind defendant, was carrying twenty-seven pounds of marijuana in the gas tank. Defendant had a gas can in his trunk. Defendant gave three different stories about his destination in Alamogordo. Melchor-Gallardo had an envelope in her purse with defendant's address on it. Finally, agents discovered a pawn ticket in defendant's car bearing the signature of Jose Melchor, defendant's stepson and Melchor-Gallardo's nephew.

Defendant argues the evidence here is analogous to that in United States v. McMahon, 562 F.2d 1192 (10th Cir. 1977). In McMahon, the government relied on a lead car-load car theory in its prosecution of the defendant for illegally transporting aliens. The government offered the following evidence: McMahon's car was seen in the vicinity of a pick-up carrying aliens; both vehicles used a road which avoided a border checkpoint; McMahon was a brother-in-law of Barboa, a passenger in the pick-up; both vehicles had CB radios, and twice when Barboa talked into his CB radio, the pick-up turned around; and the fact that the car turned around. This court reversed McMahon's convictions and remanded the case for dismissal of the indictment. We held McMahon's presence in the vicinity of the load car may have been suspicious, but it did not establish participation or guilt. Nor was McMahon's relationship with a passenger in the load car sufficient evidence of a criminal offense.

In this case, the government offered more than simply evidence of defendant's presence in the vicinity of the load car and his relationship with an occupant of the load car. Border patrol agents noticed a strong deodorizing odor emanating from the car. A jury can infer from such evidence that a defendant seeks to mask the smell of drugs. See, e.g., United States v. Hernandez-Rodriguez, 57 F.3d 895, 898-99 (10th Cir. 1995); United States v. Ray, 973 F.2d 840, 842 (10th Cir. 1992). By extension, the jury could have inferred, in light of

the other evidence of a load car/lead car arrangement, that defendant used a masking odor to divert attention away from the load car. Defendant's conflicting stories regarding his destination also provided the jury with grounds to suspect his veracity and to infer guilty knowledge. United States v. Levario, 877 F.2d 1483, 1486 (10th Cir. 1989). Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, we conclude a reasonable jury could have found defendant guilty beyond a reasonable doubt.

## Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are normally brought in collateral proceedings, not on direct appeal. United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995). Such claims brought on direct appeal are presumptively dismissible. The reason for this rule is that effective review requires that the district court first develop a factual record. Counsel accused of deficient performance can explain the reasons for their actions and the district court, which observed counsel's performance firsthand, can render its opinion. Id. at 1240. We decline to address defendant's claim of ineffective assistance of counsel since it has not been presented to the district court.

### III.

We AFFIRM defendant's convictions and sentence.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

No. 97-2008--United States v. Garcia-Marquez

Lucero, Circuit Judge, dissenting,

After a careful review of the record, I cannot escape the conclusion that the government has failed to present sufficient evidence that the defendant possessed any knowledge of the approximately 27 pounds of marijuana in the "load car."

As the majority correctly notes, the government must present sufficient evidence that the defendant "knew the essential objectives of the conspiracy" in order to sustain a conviction for conspiracy to possess marijuana with intent to distribute. See Maj. Op., pt. II. Similarly, to sustain a conviction for possession of marijuana with intent to distribute, the government must establish that the defendant "knowingly" possessed a controlled substance, see United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992), or "knowingly" aided and abetted such possession, see United States v. Teffera, 985 F.2d 1082, 1086 (D.C. Cir. 1993) ("To prove that a defendant aided and abetted the possession of illegal narcotics, the government . . . must demonstrate 'sufficient knowledge and participation to indicate that [the alleged aider and abettor] knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed.'") (quoting United States v. Raper, 676 F.2d 841, 849 (D.C. Cir. 1982)); see also United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir. 1997) ("To be guilty of aiding and abetting . . . the defendant must wilfully associate himself with the

criminal venture and seek to make the venture succeed through some action of his own.").

In reviewing the sufficiency of the evidence, it is clear that a jury may draw all reasonable inferences from the evidence presented in favor of the government. Such inferences, however, must be more than mere speculation and "the conviction must not be obtained by piling inference upon inference." Leos-Quijada, 107 F.3d at 794 (citing United States v. Jones, 49 F.3d 628, 633 (10th Cir. 1995) and United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)). Therefore, in order to sustain either of the defendant's convictions, there must be sufficient evidence in the record to support a finding that the defendant was aware that there was marijuana in Melchor-Gallardo's car.

"Conspiracy cases may be proven exclusively by circumstantial evidence." United States v. Troutman, 814 F.2d 1428, 1446-47 (10th Cir. 1987) (citing United States v. Henry, 468 F.2d 892 (10th Cir. 1972)). Accordingly, the pawn shop receipt in the defendant's car, the relationship between the defendant and Melchor-Gallardo, the envelope in Melchor-Gallardo's vehicle, and the circumstances surrounding the stop of the defendant's car may reasonably allow the inference that the defendant acted as a decoy so as to divert attention from Melchor-Gallardo. In order to sustain defendant's convictions for conspiracy and

possession, however, the circumstantial evidence must also be probative of defendant's knowledge of the presence of a controlled substance.

At best, the circumstantial evidence gives rise to a presumption that the defendant knew that he was involved in *something* illegal. This is not enough. See, e.g., Jones, 44 F.3d at 866 (showing that the defendant suspected illegal activity is insufficient to prove the defendant participated in a conspiracy); United States v. Austin, 786 F.2d 986, 989 (10th Cir. 1986) ("This record contains no evidence from which a fact finder could infer that [the defendant] knew the focus of the conspiracy was the distribution of marijuana, rather than the distribution of other contraband, or . . . other equally speculative illegal conduct, or even clandestine activity that did not violate the law."). Moreover, it is not enough that the defendant's presence give rise to suspicion, see United States v. McMahon, 562 F.2d 1192, 1196 (10th Cir. 1977); the evidence must demonstrate that the defendant *knew* that a controlled substance was involved.

The majority argues that the defendant's use of a masking odor to distract the border patrol agents allows the inference that the defendant was attempting to divert attention away from the "load car." Accepting that as an allowable inference, the presence of a "strong deodorizing odor" in the defendant's car still does not give rise to the inference that the defendant was aware that a controlled substance was present in a different car. The government's theory has

consistently been that the defendant was attempting to distract the agents by making himself look conspicuous. The majority's holding that the defendant's role as a decoy is enough to establish his awareness of the presence of a controlled substance allows the jury to convict impermissibly by "piling inference upon inference." See Leos-Quijada, 107 F.3d at 794.

This court faced a similar situation in United States v. McMahon, in which the government argued a "lead car-load car" theory in the context of wilful and knowing transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(2) and conspiracy to commit the same in violation of 18 U.S.C. § 371. See 562 F.2d at 1193-94. Despite the circumstantial evidence tending to link the automobiles in McMahon, we found that the government failed to establish "incriminating contacts" between the so-called lead car and load car. See id. at 1196. Although the majority attempts to distinguish McMahon on the ground that here the government has established more than mere "presence in the vicinity of the load car," see Maj. Op. at 5, the majority fails to account for the lack of evidence concerning the defendant's knowledge of what was being transported. As in McMahon, the government has failed to establish sufficient "incriminating contacts" because there is no evidence that the defendant knew that any controlled substance was involved.

-4-

After a careful review of the record, I cannot find evidence sufficient to establish that the defendant was aware of the presence of a controlled substance. Because the government must show such knowledge in order to sustain either of the defendant's convictions, I dissent.