**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN COVARRUBIA-MENDIOLA,

Defendant - Appellant.

No. 06-2286
(D.C. No. CR-06-835 JH)
(District of New Mexico)

## ORDER AND JUDGMENT[*]

Before **BRISCOE, HOLLOWAY** and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

In April of 2006, a District of New Mexico grand jury returned a six count

indictment against defendant-appellant Juan Covarrubia-Mendiola (Covarrubia) and co-

defendant Juan Ruiz-Guerrero (Ruiz). In count 1, Covarrubia was charged with

conspiracy to bring in illegal aliens into the United States in violation of 8 U.S.C. §

1324(a)(2)(B)(i) and 8 U.S.C. § 1324(a)(1)(A)(v)(I).  Count 2 accused Covarrubia of

conspiracy to transport illegal aliens within the United States, in violation of 8 U.S.C. §

1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(A)(v)(I).  In counts 3 and 5, the indictment

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

charged Covarrubia with bringing illegal aliens into the United States and aiding and abetting, in violation of 8 U.S.C. §§ 1324(a)(2)(B)(i) and 1324(a)(1)(A)(v)(II). In counts 4 and 6 the indictment also charged Covarrubia with transporting illegal aliens within the United States and aiding and abetting, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(II).

The district court dismissed the charges against Ruiz, upon motion by the United States. Ruiz would later be called as a witness by the government at Covarrubia's trial. The jury found Covarrubia guilty on counts 2 through 6 and the court declared a mistrial on count 1 due to the jury's inability to come to a verdict. Covarrubia was sentenced to concurrent 37 month sentences on counts 2 through 6, two years supervised release, special conditions of supervision, and a special assessment in the amount of $100 on each count of conviction. Defendant-appellant, Covarrubia, challenges his convictions, contending that they were based on insufficient evidence to support the jury verdict. This court exercises jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

On January 10, 2006, a National Guard Unit providing support services to Border Patrol agents discovered eight suspected illegal aliens in a remote area three miles north of the Mexico-United States international border. Seven of the eight men apprehended were from Mexico; the defendant-appellant, Covarrubia, is a United States citizen. Border agents then transported the group to the Columbus, New Mexico processing facility.

Covarrubia initially told Border agents that his name was "Jesus Anaya Granados." Border agents entered Covarrubia's fingerprints into the IDENT[1] fingerprinting system, and came up with his actual name–different than the name initially given. When Covarrubia learned that the agents were aware of his real name, he recanted his initial statement that he was born in Juarez, Mexico, admitted his real name and that he was a United States citizen born in Deming, New Mexico. Agents asked Covarrubia why he did not enter the United States legally. He stated that he was on probation, and therefore not supposed to leave the country, and that he would go to jail if found to have violated his probation.

Two members of the group, Daniel Del Rio Sanchez (Sanchez) and Gilberto David Loya Salas (Salas), were detained and testified at Covarrubia's trial as material witnesses. The remaining four undocumented aliens were sent back to Mexico. Sanchez testified that he, Ruiz, and the five other individuals initially went to Palomas, Mexico to cross into the United States from Palomas. After they arrived at Palomas, Sanchez testified that Covarrubia appeared at the house later and the group of eight, including the defendant-appellant, left for the United States. Prior to leaving, Covarrubia went inside the house and retrieved a backpack which he carried on their way to the United States. Sanchez testified that Covarrubia was in front of the group while they walked across a remote area of desert and directed them towards the United States until they were apprehended by

[1]IDENT is an identification system that scans and stores an individual's fingerprints and compares them with those fingerprints already stored in various other databases.

Border Patrol agents.

Salas testified that he made arrangements with Ruiz to smuggle him into the United States for three hundred dollars. Salas also stated that Ruiz and Covarrubia guided the group through the desert. Both Salas and Sanchez testified that Covarrubia and Ruiz had a conversation at Palomas, Mexico prior to leaving for the United States, but neither could hear the content of the conversation.

Ruiz testified that Covarrubia suggested traveling to Deming, New Mexico, because he knew the area and individuals in Deming. R. Vol. III at 140. Ruiz said that he gave the defendant-appellant three hundred dollars to take him to the United States. Id. at 141-42. Ruiz stated that while crossing the desert, Covarrubia directed the group to avoid Border Patrol lights and threatened the group that he would harm them if they were discovered. Id. at 144-47.

### III. DISCUSSION

We exercise *de novo* review when a party challenges the sufficiency of the evidence to support a jury verdict in a criminal case. United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). This review does not entail an evaluation of witness credibility "or [a] re-weigh[ing] [of] the evidence presented to the jury." United States v. Avery, 295 F.3d 1158, 1177 (10th Cir. 2002). On appeal, this court "ask[s] only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187

F.3d 1228, 1239 (10th Cir. 1999)(quotation omitted). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from basic facts to ultimate facts." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999). Furthermore, "the evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a conviction may not be upheld merely by "piling inference upon inference." Id.

## A. The Conspiracy Conviction Under Count 2

Count 2 of the indictment charged Covarrubia with conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). In order to prove conspiracy, the government must show (1) an agreement between two or more persons to break the law, (2) an overt act in furtherance of the conspiracy, and (3) defendant's wilful action to join the conspiracy. United States v. Summers, 414 F.3d 1287, 1295 (10th Cir.2005). However, "[t]he defendant's participation in... the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." United States v. Johnston, 146 F.3d 785, 789 (10th Cir.1998). Additionally, the element requiring an illegal agreement between two or more persons, is "frequently not susceptible of direct proof and may be inferred from statements, acts and circumstances." United States v. McMahon, 562 F.2d 1192, 1196 (10th Cir. 1977).

The government presented testimony from the co-defendant, two material witnesses and Border Patrol agents in order to show that Covarrubia conspired to illegally transport aliens within the United States. Aplee. Br. at 11. The defense's primary basis

for refuting this argument is grounded on the notion that Ruiz's testimony was inconsistent, and that he was successfully impeached at trial by other "contradictory testimony of the material witnesses." Aplt. Br. at 8. Whether the other witnesses' testimony showed that Ruiz's testimony was unreliable and should not be used in deciding Covarrubia's guilt or innocence is irrelevant because this court is unable to address the credibility or weight of witness testimony. Avery, 295 F.3d at 1177. The defense also argues that Ruiz never testified to being involved in a conspiracy with Covarrubia; nor did he testify to Covarrubia bringing or transporting any aliens. Aplt. Br. at 8. However, the responsibility of weighing testimony and evidence lies with the jury, and the jury has determined that either Ruiz's testimony was credible and served as a proper foundation to make reasonable inferences or that his testimony was unnecessary to establish Covarrubia's guilt.

It is not in dispute that Covarrubia was present with the seven other illegal aliens both prior to arrival in the United States and upon their apprehension by Border Agents. The defense points out that mere presence does not necessarily entail criminal liability and participation in the conspiracy. McMahon, 562 F.2d at 1196. The defense argues that Covarrubia did not know of any pre-arranged agreement between the illegal aliens and Ruiz and that Covarrubia did not join the effort to bring illegal aliens into the United States. Aplt. Br. at 12-13. However, as stated previously, the jury is tasked with deciding if it is reasonable to infer that Covarrubia was more than merely in the presence of the illegal aliens.

**1. Illegal agreement between two or more persons.**

The first element of a conspiracy requires that there be an agreement between two or more persons to violate the law. This court has noted the fact that the evidence of an illegal agreement is "frequently not susceptible of direct proof and may be inferred from statements, acts and circumstances." McMahon, 562 F.2d at 1196. In this case, testimony was presented that put Covarrubia at the meeting place in Palomas, Mexico and that while he was there he conferred with Ruiz and altered their destination to Deming, New Mexico. Furthermore, testimony was given that showed an agreement between Ruiz and Covarrubia to smuggle Ruiz into the United States. Finally, material witnesses provided testimony indicating that Covarrubia, or both Covarrubia and Ruiz, led the group rather than merely participating in walking.

In McMahon, where there was not sufficient evidence to sustain a conspiracy conviction, this court stated that the defendant's "conduct was not connected up with the parties actually transporting the aliens, and no incriminating contacts with them [were] shown." McMahon, 562 F.2d at 1196-97. In contrast, here there is a sufficient basis to infer that Covarrubia was in contact with the illegal aliens, actually transporting the illegal aliens by leading the group and suggesting the destination point for entry into the United States. Moreover, Covarrubia voluntarily appeared at the meeting place in Palomas, Mexico, was party to an agreement with Ruiz to smuggle him into the United States, and engaged in conversations with Ruiz at the meeting place to determine the arrival point in the United States. All of this testimony was available for the jury to rely

upon and it provided reasonable grounds to infer an agreement among the individuals and Covarrubia to violate the law.

**2. An overt act in furtherance of the conspiracy**

In order to be convicted for conspiracy, the defendant must have overtly acted to further the conspiracy. The jury heard testimony about this element of the crime as well. Sanchez, Salas, and Ruiz all indicated that Covarrubia was either leading the group by himself or leading the group along with Ruiz. Further evidence of Covarrubia's control over the situation is seen by his instructions as to how to avoid the Border Patrol while they were in the desert. Moreover, Covarrubia is also said to have suggested the destination, Deming, New Mexico, because he was both familiar with the area and had contacts in Deming. This evidence provides sufficient grounds for a reasonable jury to find that Covarrubia acted overtly in furtherance of the conspiracy.

**3. Willful participation in the conspiracy**

A defendant must have voluntarily joined a conspiracy in order to be convicted. Testimony of the material witnesses indicates that Covarrubia met the seven illegal aliens in Palomas, Mexico. Upon arrival, Covarrubia conferred with Ruiz, suggested an alternate point of entry, participated in leading the group through the desert, and came to an agreement with Ruiz for the price of smuggling him into the United States. These facts and testimonial evidence provide a reasonable foundation for the jury to infer that Covarrubia was a voluntary participant in the conspiracy.

At oral argument, the defense asserted that testimony indicating that Covarrubia's

placement in front of the group while traveling to the United States should be viewed as a "spatial relationship" rather than as him exercising control or guidance over the group. While plausible, it is also reasonable to infer that an individual in front of a group would be leading that group, especially when coupled with testimony identifying Covarrubia as an individual providing guidance and planning.

The preceding facts, inferences and witness testimony laid a proper foundation for reasonable inferences for a conviction of conspiracy. This evidence may also be used to satisfy the elements of the other crimes with which Covarrubia is charged. Evidence used to support a conviction for conspiracy can also be used to support a conviction for aiding and abetting. United States v. Carter, 130 F.3d 1432, 1441 (10th Cir.1997).

### B. The Bringing In Convictions

Counts 3 and 5 charge Covarrubia with violations of 8 U.S.C. §1324(a)(2)(B)(i). There is some discrepancy in the record as to the actual crimes with which Covarrubia is charged. The parties do not raise this issue but we address the accuracy of these convictions *sua sponte*. United States v. Wach, 907 F.2d 1038, 1041 (10th Cir. 1990)(remanding to district court for correction of errors not raised by either counsel); United States v. Anderton, 136 F.3d 747, 751 (11th Cir.1998) (remanding with instruction for the district court to correct the clerical errors where the statute cited in the judgment and commitment order was incorrect); Geddes v. United Staffing Alliance Employee Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006)(holding that an issue not raised below may be considered if the argument is purely a matter of law whose proper resolution is

certain); Grubb v. FDIC, 833 F.2d 222, 224 (10th Cir. 1987)(exercising discretion because issue presented only a question of law); Fed. R. Crim Proc. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").

**1. Statutory Discrepancy**

The indictment's citation in counts 3 and 5, the government's brief at 1, and the judgment as to counts 3 and 5, all cite 8 U.S.C. § 1324(a)(2)(B)(i). In the body of the indictment, in counts 3 and 5, the crime described is the crime set forth in 8 U.S.C. § 1324(a)(2)(A). The jury instructions, parties' arguments, the indictment and evidence in the record also deal with conduct proscribed by 8 U.S.C. § 1324(a)(2)(A)(bringing to the United States an alien not having prior official authorization to enter).

The requirements for a violation of 8 U.S.C. § 1324(a)(2) are that an individual (1) knowing or in reckless disregard of the fact that an alien does not have prior authorization to enter the United States, (2) brings to or attempts to bring to the United States in any manner and regardless of any subsequent official authorization, an alien. 8 U.S.C. § 1324(a)(2). The crime cited in the indictment and the government's brief, 8 U.S.C. §1324(a)(2)(B)(i), requires that *in addition* to the above two elements, the individual must have brought the illegal alien to the United States "with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any State punishable by imprisonment for more than 1 year."

- 10 -

8 U.S.C. § 1324(a)(2)(B)(i).

## 2. Punishment Under the Provisions

The punishment for violating 8 U.S.C. § 1324(a)(2)(A), the citation to which the jury instructions, parties' arguments, the indictment's body and evidence in the record correspond, mandates that an individual be "fined in accordance with Title 18 or imprisoned not more than one year, or both." 8 U.S.C. § 1324(a)(2)(A). The punishment for a violation of 8 U.S.C. § 1324(a)(2)(B) differs from that of § 1324(a)(2)(A). An individual found to have violated 8 U.S.C. § 1324(a)(2)(B)(i), the citation in the indictment, government's brief, and judgment, "shall...be fined under Title 18 and shall be imprisoned...in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years..." 8 U.S.C.§ 1324(a)(2)(B). The difference in penalty provisions is significant, and this court must be sure that the conviction of Covarrubia is properly recorded and indicated in the record and in the judgment.

## 3. Analysis

Creating this suspicion of a discrepancy between cited statutes is the fact that the jury instructions failed to mention the additional elements and neither party argued, presented evidence, nor questioned the witnesses regarding the additional elements contained in § 1324(a)(2)(B)(i). For example, the jury instructions state:

> The defendant is charged in Count III with a violation of [8] U.S.C. § 1324(a)[(2)]. This law makes it a crime to bring an alien into the United States who has not received prior official authorization to enter. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt: First, the defendant

- 11 -

brought or attempted to bring [Salas], an alien, into the United States. Second, the defendant knew that [Salas] was an alien. Third, [Salas] had not received prior official authorization to enter, and the defendant knew or [recklessly] disregarded...the fact that [Salas] had no prior authorization. And fourth, the defendant acted with intent to violate the law.

R. Vol. IV at 186-87.[2] These instructions make no mention of the additional elements requiring Covarrubia to intentionally or reasonably believe that the illegal alien was going to commit an offense against the United States or any state punishable by more than one year in prison.

There was no discussion or argument offered by either party in the district court or in this court for or against the idea that Covarrubia brought the illegal aliens into the United States "with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any State punishable by imprisonment for more than 1 year." 8 U.S.C. § 1324(a)(2)(B)(i). In fact, it is as if the parties were entirely unaware of the additional elements imposed in subparagraph (B)(i). Thus, the actual appropriate conviction is unclear. This court is unsure whether the government meant to charge Covarrubia under 8 U.S.C. §1324(a)(2)(A), or some other provision in 8 U.S.C. § 1324(a)(2)(B).[3] Similar to our

_____

[2]Count V of the indictment is identical except for the replacement of "Sanchez" for "Salas."

[3] There is the possibility here that the government meant to charge Covarrubia under 8 U.S.C. § 1324(a)(1)(A)(I) which provides that:
(1)(A) Any person who--
(i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the

finding that there was sufficient evidence to sustain the conspiracy conviction, the evidence is sufficient to find that Covarrubia brought illegal aliens to the United States in violation of 8 U.S.C.§ 1324(a)(2)(A), but *not* under 8 U.S.C. § 1324(a)(2)(B)(i).

In a number of cases, a defendant has challenged his conviction on grounds that the wrong citation was provided in the indictment. *See* United States v. Hogan, 38 F.3d 1148, 1152 (10th Cir. 1994)(remanding to the district court for determination of whether or not an error in the recorded judgment impacted the length of the defendant's sentence); Malone v. Crouse, 380 F.2d 741, 746 (10th Cir. 1967)(holding that the State's amendment of a statutory citation correcting a clerical error, permitted by the state court, did not convict the defendant of a crime with which he was not charged). The statutory citation in an indictment is not considered part of the indictment. United States v. Clark, 416 F.2d 63, 64 (9th Cir. 1969); Fed. R. Crim. Proc. 7(c)(3). Furthermore, it is the

> statement of facts in the pleading, rather than the statutory citation, that is controlling, and if an indictment or information properly charges an offense under the laws of the United States it is sufficient, even though the United States Attorney or the grand jury may have supposed that the offenses charged were covered by a different statute.

U.S. v. Wuco, 535 F.2d 1200, 1202 n.1 (9th Cir. 1976)(citing 1 C. Wright, Federal Rules

---

Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien... This section addresses bringing in an illegal alien at a non-designated port of entry, whereas 8 U.S.C. § 1324(a)(2)(A) proscribes bringing in an illegal alien without prior official authorization. The jury instructions, however, specifically used the phrase "without prior authorization" rather than the phrase non-designated port of entry.

- 13 -

of Criminal Procedure (1969) 228). Federal Rule of Criminal Procedure 7(c)(3) states that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed. R. Crim. Proc. 7(c)(3).

In United States v. Kaiser, 599 F.2d 942 (10th Cir. 1979), the defendant was convicted of distributing amphetamines and appealed his conviction based on the mis-citation of a statutory provision in the indictment. This court stated that

> Describing amphetamine as a Schedule III controlled substance, when actually it is a Schedule II controlled substance, is a type of "error" contemplated by Rule 7(c)(3). Such error, under the rule, is not ground for reversal of a conviction on appeal unless the defendant was misled to his prejudice. There is nothing in the present record to indicate that Kaiser was misled to his prejudice.

Kaiser, 599 F.2d at 943; *See* Williams. v. United States, 168 U.S. 382, 389 (1897); United States v. Malicoate, 531 F.2d 439, 440 (10th Cir. 1975).

For comparison, in United States v. Mundi, 892 F.2d 817, 821 (9th Cir. 1989), the Ninth Circuit noted the potential for jury confusion in the trial when (1) the indictment refers to 18 U.S.C. § 2315 but quoted 18 U.S.C. § 2314 in the caption to the indictment, (2) the government referred to § 2314 in prosecuting the charges, (3) the defense requested jury instructions for § 2314, and (4) the judgment cited § 2314. The conviction in question cited 18 U.S.C. § 2314 and the government argued that the judgment should cite 18 U.S.C. § 2315 and that the citation is merely a clerical error due to some mistaken references during trial by the government. Mundi, 892 F.2d at 821-22. Our sister court in

the Ninth Circuit decided that the errors may not have been merely clerical or mistaken, and reversed the conviction on that count.  Id. at 822.

It is not difficult to see that Covarrubia's circumstance does not resemble that in Mundi.  The confusion in Mundi emanated from the consistent usage and citation of the wrong statutory provisions during the trial.  At the end of the trial, the government attempted to change the conviction to a different statutory provision–one that had not been discussed in the proceedings.  The government then briefed the wrong statute on appeal.  Mundi, 892 F.2d at 821.  Thus, the instant case does not rise to the level of confusion exhibited in Mundi.  Here, the jury instructions and parties' arguments all pointed to the same statutory citation: 8 U.S.C. § 1324(a)(2)(A), and there was no risk of confusing the jury.  On the other hand, in Mundi the jury was instructed on a particular statutory provision and the government later wanted to change to a different statutory provision in the judgment, one whose elements had not been discussed throughout the proceedings.  Sufficient evidence *was not* presented to convict Covarrubia of an offense under 8 U.S.C. § 1324(a)(2)(B)(i) because of the failure to show that Covarrubia brought the illegal aliens in to the United States with the intent or with reason to believe they would "commit an offense against the United States or any State punishable by imprisonment for more than one year."  8 U.S.C. § 1324(a)(2)(B)(i).  However, there *was* sufficient evidence to convict Covarrubia of violating 8 U.S.C. § 1324(a)(2)(bringing in to the United States an alien not having prior official authorization to come to, to enter or to reside in the United States).

Covarrubia's conviction on counts 3 and 5 as indicated in the judgment, pursuant to 8 U.S.C. § 1324(a)(2)(B)(i), lacks sufficient evidence. The indictment's citation is not part of the indictment and the elements restated in the indictment are proper for a conviction pursuant to 8 U.S.C. § 1324(a)(2)(A); further, Fed. R. Crim. Proc. 7(c)(3) provides that there is no proper basis for overturning Covarrubia's conviction because of a citation error in the indictment. There is no prejudice to the defendant as required in order to preclude Fed. R. Crim Proc. 7(c)(3) from applying. Thus, as made clear by the aforementioned cases, the indictment is proper, the charge under 8 U.S.C. § 1324(a)(2)(A) is proper, and the case should be remanded to the district court for correction to cite the latter provision.

This court must ensure that justice is done both in substance and in form. While the corrected conviction will not alter Covarrubia's concurrent sentence, it must be remanded to protect against the potential of negative collateral consequences. Rutledge v. United States, 517 U.S. 292, 301-03 (1996). We therefore remand to the district court for clarification in the judgment to show that Covarrubia was sentenced under the proper crime and that his record reflects that fact.

### C. The Transportation Convictions

Counts 4 and 6 charge Covarrubia with violations of 8 U.S.C § 1324(a)(1)(A)(ii). In order to prove a violation under 8 U.S.C. § 1324(a)(1)(A)(ii), the government must prove: "(1) the transporting or moving of an alien within the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's

status, and (4) that the defendant acted willfully in furtherance of the alien's violation of the law." United States v. Barajas-Chavez, 162 F.3d 1285, 1287 (10th Cir. 1999). The government attempted to prove this under an aiding and abetting theory, requiring that "the defendant willfully associated with a criminal venture and sought through some affirmative action to make that venture succeed." United States v. Barajas-Diaz, 313 F.3d 1242, 1249 (10th Cir. 2002).

Much of the facts and testimony already described are sufficient for reasonable inferences to support in a conviction for transporting illegal aliens in the United States. It is indeed difficult to imagine that Covarrubia would be unaware of the illegal aliens' status due to his participation in illegally crossing at an unauthorized point of entry. As indicated above, Covarrubia acted willfully to transport the aliens within the United States by leading them to an area with which he was familiar. As a factual matter, the individuals were present in the United States in violation of the law. Once again, witnesses provided testimony indicating that Covarrubia did direct them when in the United States towards a location of his own choosing. We are not persuaded that it was unreasonable for the jury to infer that Covarrubia knew of the aliens' status, willfully brought them into the United States, that they were here in violation of the law, and that they were moved within the United States.

## IV. CONCLUSION

The evidence presented provides a proper basis to reasonably infer that Covarrubia conspired to transport illegal aliens in the United States. Witness testimony is for the jury

to evaluate, not this court. The errors contained in the judgment are to be corrected, thereby resolving the discrepancy in the record.

The convictions for counts 2, 4, and 6 are hereby AFFIRMED. Pursuant to our reasoning above regarding counts 3 and 5, we REMAND to the district court for action consistent with this opinion.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge